Tameling v. United States Freehold and Emigration Company.

The action of Congress confirming a private land claim in New Mexico, as recommended for confirmation by the surveyor-general of that Territory, is not subject to judicial review.

Error to the Supreme Court of the Territory of Colorado.

This is an action by the defendant in error against Tameling, to recover possession of one hundred and sixty acres of land in the County of Costilla and Territory of Colorado. The tract is situate within the exterior boundaries of a larger one, known as the "Costilla estate," which was severed from the "Sangre de Cristo grant." The latter is known and designated as "claim No. 14 of Charles Beaubien," in the letter of the Secretary of the Interior to the Speaker of the House of Representatives, bearing date Feb. 11, 1857. With that claim were transmitted copies of the grant, order of prefect's court, notice of claim, deed of administrator, testimony, and report.

The case was submitted to the District Court on the following agreed statement of facts: —

The piece or parcel of land described in the plaintiff's declaration, and for the possession of which the plaintiff brings this suit, is now, and at the time of the commencement of this suit was, situate, lying, and being in the County of Costilla, in the Territory of Colorado, and, at the time of the commencement of this suit, and for a long time prior thereto, was in the actual possession of the said defendant, who, before the commencement of said suit, has made valuable improvements thereon.

The said piece or parcel of land is within the exterior boundaries of and forms a part of a larger tract or parcel of land claimed by the plaintiff in fee-simple, and known as the "Costilla estate," which said estate is bounded as follows, viz.: " Beginning at a point one league below the confluence of the Rio Costilla and the Rio del Norte; thence up the Rio del Norte, on the eastern bank thereof, to its confluence with the Rio Culebra; thence easterly, following the southern bank of the Rio Culebra, to a point at or near the junction of the Rio Seco with the Rio Culebra; thence easterly to the Culebra Peaks; thence southerly to the boundary of the lands of Miranda and

Beaubien, and to a point at or near the road to Maxwell's; thence westerly, following the mountain-ranges and along the boundary of the lands of Miranda and Beaubien, to a point about one league south of the Rio Costilla; and thence westerly to the place of beginning: containing by estimation five hundred thousand acres, or thereabouts."

The said Costilla estate prior to the commencement of this suit formed a part and parcel of a yet larger tract or parcel of land, known as the " Sangre de Cristo grant; " from said grant the said estate was segregated by the conveyance thereof by Martin Coates Fisher to the plaintiff, which said conveyance is hereinafter referred to; and which said grant, as an entirety (including said Costilla estate), is described as follows : " Beginning at a point one Spanish league below the confluence of the Rio de Costilla and the Rio del Norte; thence up the Rio del Norte on the eastern bank thereof, to a point one league above the mouth of the Rio Trinchara; thence north-east to a point; thence along said mountain, south-east to a point established on the top of said mountain; thence south to the boundary of the lands of Miranda and Beaubien; thence along said boundary to a point about one league south of the Rio de Costilla; and thence west to the place of beginning."

The said Costilla estate is included in the Sangre de Cristo grant, whether reference be had to the description thereof given in the judicial certificate of possession, or in the petition of Charles Beaubien herein set forth.

The said Sangre de Cristo grant is known and designated as " Claim No. 14 of Charles Beaubien " in the letter of the Secretary of the Interior of the United States, transmitting a transcript of the claim of the said Beaubien to said grant, to the Hon. N. P. Banks, Speaker of the House of Representatives, said letter bearing date Feb. 11, 1857, and which said letter, and all of the documents pertaining to said Sangre de Cristo grant therein referred to, are in the words and figures following, viz. : —

"DEPARTMENT OF THE INTERIOR, Feb. 11, 1857.

" SIR, — I have the honor to transmit herewith for the action of Congress, contemplated by the eighth section of the act of 22d of July, 1854, the transcript of the land-claims in New Mexico,

designed for the House of Representatives, as per letter from the Commissioner of the General Land-Office of the 10th instant, a copy of which is enclosed.

"Similar documents, submitted by the commissioner in the same letter for the Senate of the United States, have been appropriately disposed of.

"With great respect, your obedient servant,

"R. McCLELLAND, *Secretary.*

"Hon. N. P. BANKS,

"*Speaker of the House of Representatives.*"

"GENERAL LAND-OFFICE, Feb. 10, 1857.

"SIR,— I have the honor to submit to the department the following documents, transmitted to this office by the surveyor-general of New Mexico, with his letter dated 31st December, 1856, to wit : —

"Claim No. 14, of Charles Beaubien. Transcript for the House of Representatives, embracing copies of grant (original), translation of grant, order of prefect's court, notice of claim, deed of administrator, testimony, and report.

"Also, similar documents for the United States Senate, with the exception of another transcript of the original grant, which has not been received from the surveyor-general.

"Claim No. 29, Casa Colorado. Transcript for the House of Representatives, embracing copies of grant (original), translation of grant, notice, testimony, and report.

"Also, similar documents for the United States Senate, with the exception of another copy of original grant which has not been received from the surveyor-general.

"Claim No. 32, of Hugh Stevenson *et als.* Transcript for the House of Representatives, embracing copies of grant (original), translation of grant, testimony, map of the Bracito tract of land, deed of Francisco Gracia y San Juan to Hugh Stevenson *et al.,* deed of Hugh Stevenson *et al.* to Francisco Gracia y San Juan, notice, brief, and report.

"Also, similar documents for the United States Senate, with the exception of other original copies of grant and map of the Bracito tract of land, which have not been received from the surveyor-general.

"The foregoing three claims have been examined and approved by the surveyor-general of New Mexico, who, in transmitting the above-mentioned copies of the documents, requested that the same

may be submitted to Congress at their present session for their action upon the claims, and they are therefore accordingly herewith submitted for that purpose.

" With great respect, your obedient servant,

" THOMAS A. HENDRICKS, *Commissioner.*

" Hon. R. MCCLELLAND,

" *Secretary of the Interior.*"

" *Claim No.* 14, *of Charles Beaubien.*

" Seal fourth. [SEAL.]    Two rials.

" For the years one thousand eight hundred and forty-two and forty-three.

" Most Excellent Governor Don MANUEL ARMIJO : —

" Louis Lee, a naturalized citizen and resident of the first demarcation of Taos, and Narciso Beaubien, a citizen, and also a resident of the above-named place, appear before your Excellency in the manner and form best provided by law and most convenient to us, and state that, desiring to encourage the agriculture of the country, and place it in a flourishing condition, and being restricted with lands wherewith to accomplish said purpose, we have seen and examined with great care that embraced within the Costilla, Culebra, and Trincheras Rivers, including the Rito of the Indians and the Sangre de Cristo to its junction with the Del Norte River, and finding in it the qualities of fruitfulness, fertile lands for cultivation, and, abundance of pasture and water, and all that is required for its settlement, and the raising of horned and woollen cattle, and being satisfied with it, and knowing that it is public land, we have not hesitated to apply to your Excellency, praying you, as an act of justice, to grant to us the possession of a tract of land to each one within the afore-mentioned boundaries, promising to commence the settlement of the same within the time prescribed by law, until the colony shall be established and permanently fixed, provided your Excellency be pleased to grant it to us.    Such is the offer we make, and swear it is not done in malice.

" LOUIS LEE.

" NARCISO BEAUBIEN.

" SANTE FÉ, Dec. 27, 1843."

" SANTA FÉ, Dec. 30, 1843.

" Referred to the prefect, in order that, if the land petitioned for be not otherwise disposed of, he cause the possession referred to by the petitioners to be given.

" ARMIJO.    [RUBRIC.]

" DONACIAÑO VIGIL [RUBRIC], *Acting Secretary.*"

"RIO ARRIBA, Jan. 7, 1844.

"The justice of the peace to whose jurisdiction belongs the land petitioned for, which, I believe, should be the third demarcation, having before him the superior decree of the most excellent governor of the 30th of December last, will proceed to the land and place the petitioners in possession, provided it is not to the injury of third parties.

"ARCHULETA.   [RUBRIC.]"

"To Don MIGUEL SANCHEZ, Justice of the Peace of the Third Demarcation:—

"The undersigned, Mexican citizens and residents of this precinct, in the most approved manner provided by law, appear before you, and state that the public land contained in the foregoing statement having been granted to us by the government of the department, as will be seen by the superior decree entered on the margin, and lacking the certificate of possession which will insure to us our legal title thereto, and prevent any one from disturbing us, we pray you to consider us as having presented ourselves, after which we will enlarge this for such ends as our rights may require. Therefore, we pray you to grant our request, justice being what we ask for. We swear that it is not done in malice, and in whatever may be necessary, &c.

"LOUIS LEE.
"NARCISO BEAUBIEN.

"TAOS, Jan. 8, 1844."

"Jan. 8, 1844.

"Considered as presented, and received as far as required by law, I, the present justice, proceeding with my attending and instrumental witnesses to the place designated in the foregoing documents, and let the possession selected by the petitioners to be given, so that they, their heirs and successors, may hold the same by a just title. The citizen Miguel Sanchez, justice of the peace of the third jurisdiction of Taos, so provided, ordered, and signed, with those in his attendance. To which I certify.

"JOSÉ MIGUEL SANCHEZ.   [RUBRIC.]

"Attending:—
"JUAN RAMOR VALDEZ.   [RUBRIC.]
"PEDRO VALDEZ.        [RUBRIC.]"

"In the pueblo of Taos, on the twelfth day of January, 1844, I, the citizen Miguel Sanchez, justice of the peace of this demarcation, by virtue of the direction contained in the foregoing decree, proceeded to the land referred to by Don Luis Lee and Don Nar-

ciso Beaubien in the foregoing instrument, and being then there with my attending and instrumental witnesses for that purpose appointed, the landmarks of the boundaries were then established according to the manner in which the land is described in the preceding petition, and corresponding with the plat which I subscribed; and, commencing on the east side of the Del Norte River, a mound was erected at one league distance from its junction with the Costilla River, thence following up the Rio del Norte, on the same eastern bank, to one league above the junction of the Trenchera River, where another mound was erected; and continuing from west to north, east, following up the current of Trinchera River to the summit of the mountain, where another mound was established; and following the summit of the mountain to the boundary of the lands of Miranda and Beaubien, the fourth mound was established; and continuing on the summit of the Sierra Madre, and following the boundary of the aforementioned lands to opposite the first mound erected, on the Del Norte River, where the fifth and last mound was erected; and from thence in a direct line to the first one erected on the north; and, being registered, I took them by the hand, walked with them, and caused them to throw earth, pull weeds, and other evidence of possession, whereupon the proceedings were concluded, the boundaries determined without any conflicting claim of any third party, as I, the aforesaid justice, in the name of the sovereignty of the nation (may God preserve it), gave to the aforementioned Don Louis Lee and Don N. Beaubien the personal and perfect possession which they solicit, serving as a title for them, their children and successors, in which I will protect and defend them; and I order them not to be deprived thereof without being first heard, and sentence given against them according to law and evidence.

"In testimony whereof, I sign with my attending and instrumental witnesses, who were Messrs. Ceram St. Vrain, Manuel Martin, and Juan Ortega, at present residents of this precinct. To which I certify.

"JOSÉ MIGUEL SANCHEZ.

"Instrumental:—
   "CERAM ST. VRAIN.
   "MANUEL ANTONIO MARTIN.
   "JUAN ORTEGA.
"Fees: $30.
"NOTE.—The words interlined are valid.                [RUBRIC.]
"Attending:—
   "JUAN RAMOR VALDEZ.
   "PEDRO VALDIZ."

"Surveyor-General's Office,

"Translator's Department, June 18, 1856.

"I, David V. Whiting, translator, certify the foregoing to be a correct translation of the original on file in this office. ~

"David V. Whiting, *Translator.*

"Surveyor-General's Office,

"Santa Fé, Dec. 30, 1856.

"The foregoing is a true copy of the original on file in this office.

"William Pelham,

*"Surveyor-General of New Mexico."*

*May Term,* 1847.

"Don Fernando de Taos, May 3, 1847.

"This being the regular May Term of the prefect's court, it met and was opened according to law, and, among other proceedings, the following were held. And the said Joseph Pley, administrator as aforesaid, presented the following petition to the court, in letters and figures as follows, to wit:—

"To the Honorable Judge of the Prefect Court for the County of Taos, Territory of New Mexico:—

"Your petitioner, Joseph Pley, administrator of the estate of Stephen L. Lee, deceased, respectfully represents, that the personal estate of the said Stephen L. Lee, deceased, is insufficient to pay the debts of the estate, as will appear by the account of your petitioner's administration. The list of debts due to and by the deceased remaining unpaid, and there being no other assets in the hands of your petitioner whereby to enable him to meet the demands against said estate, your petitioner therefore prays that so much of the real estate of the said deceased may be sold by order of the court as will be sufficient to pay the debts of the deceased, and that your Honor will make an order ordering your petitioner to proceed to sell all or a part of said real estate at either private or public sale, and upon such terms as to your petitioner, under the instructions of the court, may seem most beneficial to the interest of all concerned.

"Joseph Pley,

*"Administrator of S. L. Lee, Deceased."*

"Don Fernando de Taos, May 3, 1847.

"To Joseph Pley, Administrator of the Estate of Stephen L. Lee, Deceased.

"Your petition to the prefect court within and for the county of Taos, in the Territory of New Mexico, praying to said court to

sell the real estate of Stephen L. Lee, deceased, or so much thereof as will satisfy such claims as may be presented, the court as aforesaid grants the request contained in said petition, and that you are hereby permitted to sell said real estate at private sale, at not less than the value as appraised.

"Witness, Robert Crary, clerk of the prefect court for said county, at Don Fernando de Taos, this third day of May, A.D. 1847.

"ROBERT CRARY, Clerk.

"Approved : VINCINTE MARTINEZ, Prefecto."

"I hereby certify that the foregoing is a true copy of the record of the prefect court, on file in my office, of the May Term of said court, held in the town of Don Fernando de Taos on the first Monday of May, A.D. 1847, at which time Vincente Martinez was prefect, and Robert Crary clerk.

"Witness, Pedro Valdez, clerk of the prefect's court of the county of Taos and Territory of New Mexico, and my private seal, there being no seal for said county, Aug. 1, 1855.

"[SEAL.]        PEDRO VALDEZ, Clerk."

"TERRITORY OF NEW MEXICO,
        "County of Taos : —

"I, José Benito Martinez, judge of the probate or prefect's court within and for the county of Taos, do hereby certify that Pedro Valdez, who signed the foregoing certificate, and whose signature thereto is genuine, was at the time of so doing clerk of said court.

"Given under my hand this sixth day of August, A.D. 1855.

"JOSÉ BENITO MARTINEZ, Judge of Probate."

"UNITED STATES OF AMERICA,
        "Territory of New Mexico, ss : —

"I, W. W. H. Davis, secretary of the Territory of New Mexico, do hereby certify that José Benito Martinez, whose certificate is herein annexed, and who has thereto subscribed his name, was at the time of so doing a judge of probate in and for the county of Taos and Territory aforesaid, duly elected and qualified to act as such, and that the signature purporting to be his is genuine.

"In testimony, I have hereunto set my hand and affixed my seal of office the eleventh day of August, A.D. 1855.

"[SEAL.]        W. W. H. DAVIS,
                        "Secretary Territory of New Mexico."

" Surveyor-General's Office,    ·.

"Sante Fé, Dec. 30, 1856. ·

" The. foregoing is a true copy of the original on file in this office.

" William Pelham,
" *Surveyor-General of New Mexico.*"

" This indenture, made this fourth day of May, in the year of our Lord 1848, between Joseph Pley, administrator of Stephen L. Lee, deceased, of the county of Taos and Territory of New Mexico, of the first part, and Charles Beaubien, of the same county and Territory, of the second part, witnesseth : That whereas an order was entered at the January Term of the prefect's court of the county of Taos, commanding the said Joseph Pley to sell as administrator of said estate all the real estate of said deceased for the payment of debts allowed against said estate : Now, therefore, by virtue of said order, the said party of the first part, for and in consideration of the sum of $100, to him in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, doth hereby give, grant, bargain, sell, convey, transfer, and make over unto the said party of the second part, his heirs and assigns, for ever, all the right, title, and interest of the said Stephen L. Lee in and to the following-described tract, lot, or parcel of land : All that certain tract of land known as the Sangre de Cristo claim, and which was granted by the Mexican government to Stephen L. Lee and Narciso Beaubien, and described as follows : Beginning from a point one league below the confluence of the Rio de Costilla and the Rio del Norte ; thence up the Rio del Norte, on the eastern bank, to a point one league above the mouth of the Trinchera ; thence north-north-east .to a point on the mountain ; thence along the mountain south-east, east to an established point on the top of the mountain ; thence south, along the line of the Poniete claim of Miranda and Beaubien ; thence to a point about a league south of the Rio Costilla; thence west to the place of beginning ; and a number of acres not known : to have and to hold the above-granted premises unto the said Charles Beaubien, his heirs and assigns, for ever. In testimony whereof, the party of the first part has hereunto set his hand and affixed his seal the day and year above written.

" [L. S.]        .        . Joseph Pley,
" *Administrator of the Estate of Stephen L. Lee.*

" In presence of Vital Trujillo."

" Territory of New Mexico,
      " County of Taos, ss : —

"Be it remembered that on this eleventh day of May, in the year 1848, Joseph Pley, administrator of the estate of Stephen L. Lee, who is personally known to the undersigned, clerk of the Circuit Court for said county, to be the same person whose name is subscribed to the foregoing instrument in writing, and acknowledged the same to be his act and deed, as administrator as aforesaid, for the purposes therein mentioned.

" Taken and certified the day and year above written.
                         " Robert Crary, [seal]
                              " Clerk of the Circuit Court."

                    " Surveyor-General's Office,
                      " Santa Fé, Dec. 30, 1856.

"The foregoing is a true copy of the original on file in my office.
                            " William Pelham,
                      " Surveyor-General of New Mexico."

" To General William Pelham, Surveyor-General of the Territory
    of New Mexico : —

" Charles Beaubien, a citizen of the United States and a resident of the Territory of New Mexico, represents that he is the legal owner, in fee, of a certain tract of land lying and being situated in the county of Taos, in said Territory of New Mexico, known as the Sangre de Cristo grant, described as follows : Beginning from a point one Spanish league below the confluence of the Rio de Costilla and the Rio del Norte ; thence up the Del Norte, on the eastern bank, to a point one league above the mouth of the Rio Trinchera ; thence north-east to a point on the mountain ; thence along said mountain, south-east to a point established on the top of the said mountain ; thence south to the boundary of the lands of Miranda and Beaubien ; thence along said boundary to a point about one league south of the Rio Costilla ; and thence west to the place of beginning : all of which points and boundaries are well-known landmarks, and monuments were placed at the same at the time of giving possession of the same to the original grantees. The said Charles Beaubien, the present claimant and actual owner, claims a perfect title to said lands by virtue of a grant made on the thirtieth day of December, a.d. 1843, by Manuel Armijo, governor of the department of New Mexico, and perfected according to law by possession being given by the alcalde, José Miguel Sanchez,

on the twelfth day of January, A.D. 1844. Said grant was made according to the usage and laws and customs of the Republic of Mexico, to Luis Lee and Narciso Beaubien, as will appear by reference to said laws and usages, at that time in force, and the Spanish laws, so far as recognized by the government of the Republic of Mexico. The said Charles Beaubien further states, that he cannot show the quantity of land claimed by him, only so far as set forth by the foregoing description of points and bounds, nor can he furnish a plat of the survey of the same, as no survey has ever been made. The claimant further states that the said Luis Lee and Narciso Beaubien, after having been put in lawful possession of said grant, conformed to all the laws and regulations in regard to the same as required at that time, and held possession thereof until Jan. 19, 1847, when both were slain in the massacre of Taos of that date; that Narciso Beaubien was the son of the claimant, and, according to law, all the interest of the said Narciso Beaubien, deceased, descends to the present claimant, and that he claims all the right, title, and interest of the said Luis Lee, deceased, by virtue of a deed made by the administrator of Luis Lee the fourth day of May, 1848. Said original grant is herewith filed, marked 'A;' deed from Joseph Pley, administrator of Luis Lee, to the claimant marked 'B,' also certified copy of the record of the court of probate for said county of Taos, authorizing the administrator to sell said right, title, and interest, marked 'C.' Claimant further states that he is prepared to prove that the Luis Lee whose name appears in the original grant, and the Stephen L. Lee whose name appears in the administrator's deed to the claimant, are one and the same person.

"Claimant is prepared further to prove, if deemed necessary, that since the said grant came into his possession he has had made extensive settlements on the same, and that it is becoming under his ownership rapidly populated. The claimant therefore respectfully asks a speedy acknowledgment of his claim.

"SMITH & HOUGHTON,
    "*Attorneys for Claimant.*"

"SURVEYOR-GENERAL'S OFFICE,
    "SANTA FÉ, Dec. 30, 1856.

"The foregoing is a true copy of the original on file in this office.

"WILLIAM PELHAM,
    "*Surveyor-General of New Mexico.*"

"CHARLES BEAUBIEN, SANGRE DE CRISTO.

"DONACIAÑO VIGIL, being duly sworn, was interrogated in the following manner : —

"*Question.* What office did you hold in year 1843 under the Mexican government?

"*Answer.* Acting secretary of the department of New Mexico.

"*Q.* What office did Manuel Armijo hold at that time?

"*A.* He was political governor and military commander of the department.

"*Q.* Is his signature on the grant made to Narciso Beaubien and Luis Lee to the Sangre de Christo and your own signature to said document genuine?

"*A.* They are.

"*Q.* What office did Juan Andres Archuleta hold at that time?

"*A.* He was the prefect of the northern district, and the land granted was within his district.

"*Q.* Do you know the signature of Archuleta, and is the one attached to said grant genuine?

"*A.* I do; and it is genuine.

"*Q.* Have you seen the governor and prefect sign their name?

"*A.* I have.

"*Q.* Are Stephen L. Lee and Luis Lee one and the same person, and was he as well known by one name as by the other?

"*A.* He was the same person, and was as well known by one name as by the other.

"*Q.* Did you know Narciso Beaubien, the son of the present claimant?

"*A.* I did; and he and Lee were both killed at the massacre of Taos in the year 1847.

"*Q.* Did Narciso Beaubien have any children?

"*A.* He did not; he was sixteen years old when he was killed.

"*Q.* Have you any interest in this claim?

"*A.* I have not.

"*Q.* Do you know who was the prefect of Taos County in the year 1847, after the massacre?

"*A.* I was acting governor and secretary at that time, and Vincinte Martinez was appointed by me to fill that office.

"*Q.* Is your signature to the registry of said document genuine, and in what capacity did you sign?

"*A.* It is; and signed as secretary and recorder of land-titles under the Harney code.

"DONACIAÑO VIGIL."

"Sworn and subscribed to before me this third day of December, 1856.

"WILLIAM PELHAM."

"JOAB HOUGHTON, sworn:—

"*Question.* State if you knew Narciso Beaubien.

"*Answer.* I did.

"*Q.* State if he was the son of Charles Beaubien, the present claimant?

"*A.* He was so considered by his father and mother.

"*Q.* Did you know Stephen L. Lee, and how long did you know him?

"*A.* I knew him from 1843 up to the time of his death.

"*Q.* State what the 'L' in his name stood for?

"*A.* It stood for Louis, and sometimes he signed Stephen Louis Lee, but generally Stephen L. Lee; and he was often known among the Mexicans by Louis Lee, or Stephen L. Lee.

"*Q.* Are Lee and Narciso Beaubien alive now?

"*A.* They are both dead.

"*Q.* How did they come to their death?

"*A.* They were killed in the massacre of Taos, on the 19th of January, 1847.

"*Q.* Do you know if Narciso Beaubien had any children at the time of his death?

"*A.* He had not. He was a minor, and could not have been more than sixteen years of age at the time of his death.

"*Q.* Do you know the signature of Pedro Valdez, attached to the transcript of the record of the court, and is it genuine?

"*A.* I do. He was clerk of the probate court, and I saw him sign the transcript referred to.

"*Q.* Do you know the signature of José Benito Martinez, attached to the document mentioned?

"*A.* I do; and saw him sign the certificate that Pedro Valdez was clerk of his court.

"*Q.* Do you know the signature of Joseph Pley, administrator of Stephen L. Lee, attached to the conveyance to Charles Beaubien?

"*A.* I do; and have been long acquainted with his signature, and have often seen him sign.

"*Q.* Do you know the residence of Vidal Trujillo, subscribing witness to said conveyance?

"*A.* I understand he resides at Ruyado, over one hundred miles from this place (Santa Fé).

" *Q.* Do you know the signature of Robert Crary, appended to the same document?

" *A.* I do ; it is his signature, and I know he was clerk of the Circuit Court at that date.

" *Q.* Were you at that time chief justice of this Territory ·

" *A.* I was.

" J. HOUGHTON."

" Sworn to and subscribed before me this third day of December, 1856.

" WILLIAM PELHAM."

" MANUEL MARTINEZ, sworn : —

" *Question.* Do you know José Miguel Sanchez, the justice of the peace whose signature is affixed to the certificate of possession in this case?

" *Answer.* I have known him since I have had the use of reason.

" *Q.* Do you know his signature, and have you seen him sign?

" *A.* I know his signature, and have seen him sign frequently.

" *Q.* Is his signature appended to the foregoing document genuine?

" *A.* It is.

" *Q.* Is José Miguel Sanchez dead, and when did he die?·

" *A.* He died in the month of June of the present year.

" MANUEL MARTINEZ."

" Sworn to and subscribed before me this fourth day of December, 1856.

" W. H. PELHAM, *Surveyor-General.*"

" SURVEYOR-GENERAL'S OFFICE,<br>" SANTA FÉ, Dec. 30, 1856.

" The foregoing is a true copy of the original on file in this office.

" WILLIAM PELHAM, *Surveyor-General.*"

" CHARLES BEAUBIEN, Assignee of STEPHEN L. LEE and NARCISO BEAUBIEN, Deceased, *v.* THE UNITED STATES.  } *Sangre de Cristo grant.*

" The above case was set for trial on the third day of December, 1856.

" On the twenty-seventh day of December, 1843, Luis Lee and Narciso Beaubien petitioned Manuel Armijo, civil and military governor of New Mexico, for a grant of land in what is now the county

of Taos, 'embracing the Costilla, Culebra, and Trinchera Rivers, including the Rito of the Indians, and Sangre de Cristo, to its junction with the Del Norte River.' This petition was referred, on the thirtieth day of December, 1843, by Manuel Armijo, the civil and military governor aforementioned, to the prefect, with instructions to give the possession asked for by the petitioners in case there was no impediment.

"On the 7th of January, 1844, Juan Andres Archuletta, the prefect, directed the justice of the peace of the demarcation wherein the land was situated to place the parties in possession, in accordance with the decree of the civil and military governor, by virtue of which the justice of the peace, José Miguel Sanchez, placed the parties in possession of the land, with the boundaries contained in the petition, vesting in them, their children and successors, a title in fee to said lands.

"Narciso Beaubien, one of the grantees, was killed at the massacre of Taos, in the year 1847; and, dying without issue, his father, Charles Beaubien, the present claimant, became the heir of one undivided half of the land granted, and purchased the remaining undivided half from Joseph Pley, administrator of the estate of Stephen L. Lee, who was killed at the same time and place as Narciso Beaubien.

"The genuineness of the signatures of the granting officers and the signature of Joseph Pley, administrator of the estate of Stephen L. Lee, are proven by the testimony of competent witnesses. The signature of the clerk of the Probate Court, attached to a transcript of the record of the court ordering the sale of the property of Stephen L. Lee, deceased, is also proved to be genuine. It is also proven that Stephen L. Lee and Luis Lee, assigned in the original petition, were one and the same individual, and that Narciso Beaubien, the son of Charles Beaubien, the present claimant, died without issue. The testimony also shows that the land has been occupied from the time the grant was made up to the present day.

"The supreme authorities of the remote province of New Spain, afterwards the Republic of Mexico, exercised from time immemorial certain prerogatives and powers, which, although not positively sanctioned by congressional enactments, were universally conceded by the Spanish and Mexican governments; and there being no evidence that these prerogatives and powers were revoked or repealed by the supreme authorities, it is to be presumed that the exercise of them was lawful. The subordinate authorities of the provinces implicitly obeyed these orders of the governors, which were continued

for so long a period until they became the universal custom or un-written law of the land, wherein they did not conflict with any sub-sequent congressional enactment.   Such is the principle sanctioned by the Supreme Court of the United States, as expressed in the case of *Fremont* v. *The United States*, 17 How. 542, which decision now governs all cases of a similar nature.

"The grant being a positive one, without any subsequent con-ditions attached, and made by a competent authority, and having been in the possession and occupancy of the grantees and their assigns from the time the grant was made, it is the opinion of this office that the grant is a good and valid one, and that a legal title vests in Charles Beaubien to the land embraced within the limits contained in the petition.   The grant is therefore approved by this office and transmitted to the proper department, with the recom-mendation that it be confirmed by the Congress of the United States.

"WILLIAM PELHAM, *Surveyor-General.*
"SURVEYOR-GENERAL'S OFFICE,
"SANTA FÉ, N. M., Dec. 30, 1856.

"SURVEYOR-GENERAL'S OFFICE,
"SANTA FÉ, N. M., Dec. 31, 1856.
"The foregoing is a true copy of the original on file in this office.
"WILLIAM PELHAM, *Surveyor-General.*"

Narciso Beaubien, the co-grantee with Stephen L. Lee (*alias* Luis Lee), of said claim No. 14, died in the year 1847, without issue, whereby his father, the said Charles Beaubien, became the sole heir of whatever interest the deceased had in said land-grant or claim; that in the year aforesaid the said Lee also died; that afterwards, and on the fourth day of May, in the year 1848, the said Charles Beaubien acquired the interest of the said Lee in said land-grant, by a purchase and conveyance thereof in due form of law, from the administrator of the estate of the said Lee; that the said Charles Beaubien had and pos-sessed all of the rights, titles, and interests, both in law and equity, in said grant, which, by the proceedings above set forth and referred to in the aforesaid letter of the Secretary of the Interior, were vested in the said Narciso Beaubien and the said Stephen L. Lee, at the time of their death as aforesaid.

The said Charles Beaubien retained his aforesaid interest in said grant until after the passage and approval of a certain act

of the Congress of the United States, entitled "An Act to confirm certain private land-claims in the Territory of New Mexico," approved June 21, 1860.

The claim designated in said act of Congress as claim No. 14 is the claim of the said Charles Beaubien to that tract of land hereinbefore described by its boundaries, and herein designated as the "Sangre de Cristo grant," and which tract of land includes the said "Costilla estate."

After the passage and approval of the said act of Congress, and on the seventh day of April, 1864, the right, title, and interest of the said Charles Beaubien in and to the said Sangre de Cristo grant, otherwise the said claim No. 14, was absolutely conveyed and vested in Hon. William Gilpin; and thereafter and prior to the fourteenth day of July, 1870, the said Gilpin conveyed the right, title, and interest in said grant by him so derived to one Morton Coates Fisher; that thereafter, and on the day and year last aforesaid, the said Morton Coates Fisher absolutely conveyed to the plaintiffs his right, title, and interest derived as aforesaid in and to that part and portion of the said grant or claim No. 14, generally known and herein designated as the "Costilla estate," the boundaries of which said estate, as taken from the said conveyance thereof, are hereinbefore given, and include the piece or parcel of land described in the plaintiff's declaration, and the possession of which is in controversy in this suit.

The said plaintiff has not conveyed or granted his title derived as aforesaid to the piece or parcel of land described in the declaration in this cause, nor the right of the possession thereof, to the defendant or other person; but has claimed the title to and possession of said land ever since the conveyance as aforesaid by the said Fisher to the plaintiff.

If the facts aforesaid, under the law, show that the plaintiff is entitled to the possession of the land described in the declaration in this case, then the finding of the court shall be for the plaintiff; if the said facts under the law show that the plaintiff is not entitled to such possession, then the finding of the court shall be for the defendant; and upon the finding of the court the proper judgment in ejectment for the plaintiff, or for the defendant, as the case may be, shall be entered of record in said court.

Judgment was rendered in favor of the plaintiff. It was affirmed by the Supreme Court of the Territory, and Tameling sued out this writ of error.

Argued by *Mr. John A. Wills* for the plaintiff in error, and by *Mr. Matt. H. Carpenter* and *Mr. W. W. MacFarland* for the defendant in error.

MR. JUSTICE DAVIS delivered the opinion of the court.

The determination of this case depends upon the effect of the act of Congress " to confirm certain private land claims in the Territory of New Mexico," approved June 21, 1860. 12 Stat. 71. Did the act confirm the Sangre de Cristo grant to the extent of the exterior boundaries of the claim ? If it did, the judgment below must be affirmed. If it did not, inasmuch as no specific portion of the land within those boundaries was severed from the remainder and confirmed to the claimant, the plaintiff below, who derives title under him, has not shown a right to the demanded premises, and the judgment must be reversed.

We have repeatedly held that individual rights of property, in the territory acquired by the United States from Mexico, were not affected by the change of sovereignty and jurisdiction. They were entitled to protection, whether the party had the full and absolute ownership of the land, or merely an equitable interest therein, which required some further act of the government to vest in him a perfect title. The duty of providing the mode of securing them and fulfilling the obligations which the treaty of cession imposed, was within the appropriate province of the political department of the government. In discharging it, Congress required that all titles to real property in California, whether inchoate or consummate, should undergo judicial examination. If a party failed to avail himself within a prescribed time of the provisions of the act of March 3, 1851, and prosecute his claim thereunder, it was completely barred, and the land covered by it reverted to the public domain. The California land-claims disposed of in this court were asserted in a direct proceeding against the United States. It became our duty, as it had been that of the board of commissioners and of the District Court, to decide on their validity, upon the documentary and other evidence incorporated in the

record.  We were required to be governed by the treaty of Guadalupe Hidalgo, the law of nations, the laws, usages, and customs of the government from which the claim was derived, the principles of equity, and the decisions of this court, as far as they were applicable.  Were we now exercising appellate jurisdiction over the proceedings of a court or officer specially appointed to determine the validity and extent of the grant in question, it would be our duty to either affirm or reverse the decision, pursuant to the rules prescribed for our guidance.  But Congress legislated otherwise for the adjustment of land-claims in New Mexico.  By the eighth section of the act of 1854, 10 Stat. 308, the duty of ascertaining their origin, nature, character, and extent was expressly enjoined upon the surveyor-general of that Territory.  He was empowered for that purpose to issue notices, summon witnesses, administer oaths, and perform all necessary acts in the premises.  He was directed to make a full report, with his decision, as to the validity or invalidity of each claim, under the laws, usages, and customs of the country before its cession to the United States.  That report, according to a form to be prescribed by the Secretary of the Interior, was to be laid before Congress for such action as might be deemed just and proper.

It will thus be seen that the modes for the determination of land-claims of Spanish or Mexican origin were radically different.  Where they embraced lands in California, a procedure, essentially judicial in its character, was provided, with the right of ultimate appeal by either the claimant or the United States to this court.  No jurisdiction over such claims in New Mexico was conferred upon the courts; but the surveyor-general, in the exercise of the authority with which he was invested, decides them in the first instance.  The final action on each claim reserved to Congress, is, of course, conclusive, and therefore not subject to review in this or any other forum.

It is obviously not the duty of this court to sit in judgment upon either the recital of matters of fact by the surveyor-general, or his decision declaring the validity of the grant.  They are embodied in his report, which was laid before Congress for its consideration and action.  We need only say that he distinctly sets forth that Luis Lee and Narciso Beaubien, Sept. 27,

1843, petitioned the then civil and military governor of New Mexico "for a grant of land in what is now the county of Taos, embracing the Costilla, Culebra, and Trinchera Rivers, including the Rito of the Indians, and Sangre de Cristo to its junction with the Del Norte River;" that the petition was referred by the governor to the prefect, with instructions to give the possession asked for by the petitioners; that they were put in possession with the boundaries contained in the petition, "vesting in them, their children and successors, a title in fee to said lands." After stating that, by the death of one of the grantees, his heir-at-law, Charles Beaubien, inherited the undivided half of the land, and that he acquired the remainder from the administrator of the other grantee, the surveyor-general reaches the conclusion that the grant is a good and valid one, and that a legal title vests in Charles Beaubien to the land embraced within the limits contained in the petition. The grant was approved, and recommended for confirmation by Congress.

Congress acted upon the claim "as recommended for confirmation by the surveyor-general." The confirmation being absolute and unconditional, without any limitation as to quantity, we must regard it as effectual and operative for the entire tract.

The plaintiff in error insists that, under the Mexican colonization laws in force when the grant was made, not more than eleven square leagues for each petitioner could be lawfully granted. As there were in the present instance but two petitioners, and the land within the boundaries in question is largely in excess of that quantity, the invalidity of the grant has been earnestly and elaborately pressed upon our attention. This was matter for the consideration of Congress; and we deem ourselves concluded by the action of that body. The phraseology of the confirmatory act is, in our opinion, explicit and unequivocal. In *Ryan. et al.* v. *Carter et al.*, *supra*, p. 78, we recognized and enforced, as the settled doctrine of this court, that such an act passes the title of the United States as effectually as if it contained in terms a grant *de novo*, and that a grant may be made by a law as well as by a patent pursuant to law.                    *Judgment affirmed.*