[Civil No. 228.   Filed July 30, 1888.]

[S. C. 19 Pac. 6.]

FRANK ELY, Plaintiff and Appellant, v. THE NEW MEXICO AND ARIZONA RAILROAD COMPANY, Defendant and Appellee.

1. SUIT TO QUIET TITLE—PLEADINGS—GOVERNED BY CHANCERY RULES— LAWS 1881, p. 116, SEC. 1, CONSTRUED.—Where a complaint in a suit to quiet title fails to allege possession or right to possession in plaintiff it is subject to general demurrer, unless it alleges the inadequacy of remedies at law or other grounds for equitable relief. Being a bill in equity it is governed by the rules of chancery pleading. The statute of 1881 enlarged the remedies of the owner of the true title by enabling him to apply for equitable relief even when out of possession, but he must bring himself within the rules of chancery pleading.

REVERSED 129 U. S. 291-294, 32 L. ED. 688, 9 Sup. Ct. Rep. 293.

APPEAL from a Judgment of the District Court of the First Judicial District in and for the County of Pima. Wm. H. Barnes, Judge. Affirmed.

The facts are stated in the opinion.

Jeffords and Franklin, and Rochester Ford, for Appellant.

Under Compiled Laws of Arizona, Sec. 256, pp. 449, so far modified the old equity rule, that but three things were necessary to concur in the plaintiff. First: title. Second: possession. Third: the assertion of an adverse claim on the part of the defendant. *Curtis* v. *Sutter*, 15 Cal. 259; *Merced Min. Co.* v. *Fremont*, 7 Cal. 319, 68 Am. Dec. 262.

In 1881 the statute was amended to read as follows: "An action may be brought by one against another who claims an estate or interest in said real property adverse to him, for the purpose of determining such adverse claim." Laws of Arizona, 1881, p. 116, Sec. 1. The obvious intention of this amendment was to permit any person, claiming an interest or estate in land, whether in or out of possession, to at once bring an action for the purpose of having any claim adverse to his, determined, and the title quieted. The concurrence of but two facts are necessary to warrant the action under the statute as amended; First, the claim of an estate or interest in the real property which is subject of controversy; Second, that another person should make or assert some claim to said real property, adverse to him. That being so the plaintiff was bound only to allege his estate or interest in the land, the adverse claim of defendants, and to pray that said adverse claim be determined. Compiled Laws of Arizona, Sec. 39, pp. 414 and 415.

The authorities are uniform and conclusive that a complaint such as the one in this action, states a cause of action, and the demurrers should have been overruled. *Statham* v. *Dusey,* 11 Pac. (Cal.) 606; *Stoddard* v. *Burge,* 53 Cal. 394; *Pierce* v. *Felter,* 53 Cal. 18; *Rough* v. *Simmons,* 3 Pac. (Cal.) 91; *Rough* v. *Booth,* 3 Pac. (Cal.) 805; *Garvey* v. *Willis,* 50 Cal. 619; *Goldsmith* v. *Gilliland,* 10 Sawy. 606, 22 Fed. 865; *Marot* v. *The Germania etc. Association,* 54 Ind. 37; *The Jeffesonville etc. R. R. Co.* v. *Oyler,* 60 Ind. 383; *Holland* v. *Challen,* 110 U. S. 15; *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 405; *Clark* v. *Smith,* 13 Pet. 195.

Haynes & Mitchell, for Respondents.

Unless the complaint alleges that the plaintiff is in possession, it must set forth the particulars of the plaintiff's title. The statute in question lays down no rule of pleading. The complaint must show that the plaintiff has no remedy other than that to be obtained from a court of equity. 3 Pom. Eq. Sec. 1399.

WRIGHT, C. J.—This was a suit in equity to quiet title.
The complaint alleges that the plaintiff is the owner in fee
of all the land described in the complaint, but does not allege
that he is in possession; nor does it aver that he is entitled to
possession, or ask that possession be awarded him. The land
is described as a Mexican land grant, called the "Rancho
San Jose de Sonoita," and situated in the Sonoita valley,
county of Pima, territory of Arizona, and that it was granted
by the Mexican authorities to one Leon Herreras on the 15th
day of May, 1825. The complaint further describes the land
according to the calls of a survey made by the government
of Spain on the 26th and 27th of June, 1821. Then, after
averring that the claim of the defendants, and each of them,
is without any right whatsoever, the complaint closes with
the following prayer for relief: "(1) That the said de-
fendants, and each of them, be required to set forth the
nature of his claim, and that all adverse claims of the de-
fendants, and each of them, may be determined by a decree
of this court; (2) that by said decree it be declared and
adjudged that the defendants have no estate or interest what-
ever in or to said land and premises, or in or to any part
thereof, and that the title of plaintiff is good and valid;
(3) that the defendants, and each of them, be forever en-
joined and debarred from asserting any claim whatever in
or to said land and premises, or to any part thereof, adverse
to plaintiff; and for such other and further relief as to
this honorable court shall seem meet and agreeable to equity,
and for his costs of suit." The principal defendants de-
murred to this complaint, alleging as grounds of demurrer
"(1) that the court had no jurisdiction of the subject-mat-
ter of the action; (2) that there is a defect of parties de-
fendant, in that it is not alleged that defendants claim a
joint interest in the premises referred to in the complaint,
or any part thereof; (3) that said complaint does not state
facts sufficient to constitute a cause of action." On the lat-
ter cause of demurrer the court sustained the pleading; and
the plaintiff electing to stand on his complaint, and refusing
to amend the same, the court dismissed the action. From this

order and judgment of the court the plaintiff appealed; and the principal question to be considered here is, was the action of the court below, in sustaining the demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action, erroneous? This question should be answered by the rule of chancery pleading; for, be it remembered, this was a bill in equity. We again observe, in the outset, that this bill nowhere alleges possession, or even the right of possession, in the plaintiff. The irresistible inference therefore is that he is not in possession. It goes without saying that a plaintiff in possession occupies quite a different attitude, in respect to the remedies to which he is entitled, from a plaintiff out of possession. A claimant in possession is *prima facie* the owner, while no such presumption attaches to a claimant out of possession. A plaintiff in possession need only state that fact in his bill, that he is the owner, etc., and that defendant is asserting some sort of adverse claim, to authorize the court of equity to grant such relief as he may be entitled to. But is that all that is necessary where the plaintiff is out of possession?

To state facts sufficient to constitute a cause of action such as will authorize the intervention of a court of chancery, within the rules of chancery pleading, should not the plaintiff out of possession further state facts sufficient to show to the chancellor that the right or estate to be protected is equitable in its nature, or that the remedies at law are inadequate, where the right or estate is legal? Or at least such facts as will authorize such a deduction to be made, and thus authorize and justify chancery interposition? Is it not patent on the face of this bill that, if its allegations are true, the plaintiff has an indubitable legal estate? From aught that appears to the contrary is it not equally apparent that plaintiff has a full, adequate, and complete remedy at law by the action of ejectment? There is no question that the statute of 1881 authorized him to bring the proper suit, whether in or out of possession, though the repeal of that law went into effect about a month after this suit was filed; but, if out of possession, to obtain equitable relief, ought he not, by the aver-

ments of his complaint, to bring himself within the purview of equity jurisdiction? Mr. Pomeroy, in his Equity Jurisprudence, (section 130) says: "In order that a cause may come within the scope of the equity jurisdiction, one of two alternatives is essential; either the primary right, estate, or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or the remedy granted must be in its nature purely equitable, or, if it be a remedy which may be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and adequate through the equitable modes of procedure." They who want equity themselves must give it to others. Ought not A. to show his own strength before asking that the weakness of B. be revealed? It will not do to say he shows his strength by asserting his title in fee; for this would indicate his right to a full, but only a legal, remedy. Ought he to be permitted to stand in the forum with closed hands, and demand that B.'s be opened? Will equity allow the aggressor to provoke the conflict, using, forsooth, concealed weapons, and then indicate his adversary's line of defense? While reason is the life of the law, conscience is the vital principle of equity. In fact, equity rules in the realm of conscience; here it had its birth, and here alone it has flourished. It will therefore tolerate no wrong, and submit to no advantage. Ought not the plaintiff in this case to have brought himself clearly, by his complaint, under some head of equitable remedy, and then demanded the appropriate relief. As it stands, does this complaint state facts sufficient to constitute a cause of action in equity? Does it not reveal an unmistakable and adequate remedy at law? And is it not a well-settled rule of equity jurisprudence that where a party, in subserving the interests of a legal estate, has a sure legal remedy, which vouchsaves to him ample and complete relief, he must resort to legal and not equitable tribunals. Now, it is true, the legislature of this territory has contravened the old equity rule that a party must be in possession before he could maintain a peace bill, or an action *quia timet;* and, under the law

as amended in 1881, and which was still in force when this action was brought, any person could bring an action against another claiming adversely, for the purpose of determining such adverse claim.  This amendment was an enabling act. It enabled a plaintiff to do what before he could not do,— to bring an action in equity to quiet title to land when he himself was not in possession thereof.  But should he not come with such statement of facts as would justify him in invoking the aid of chancery.  Will it be contended that this amendment was intended to abolish, and did abolish, the universal rule of equity that, where there is an adequate remedy at law, resort must be had to courts of law, and chancery courts will not interfere?  This would certainly be abolishing the distinction between law and equity, thus far at least; and a plaintiff out of possession, but owning the fee, and having the right of possession, and therefore, beyond dispute, having a complete, absolute, and adequate remedy at law, by the action of ejectment, could, nevertheless, go into chancery, and, without stating any of the ultimate facts ordinarily requisite to enable the court to apprehend its equitable functions, maintain his action *quia timet*.  This would be an unreasonable construction.  Again we ask, had not the plaintiff herein, taking the averments in his complaint to be true, an adequate and complete remedy at law?  Let us see.  He was out of possession; if entitled to it, ejectment would have awarded him the possession.  He wanted the title adjudicated; ejectment would not only have done that completely and fully, but would have allowed his and defendant's titles to have been passed upon by a jury of their peers.  The old fictions and fictitious persons used in ancient actions of ejectment have been done away with in this territory, and generally in this country.  Those really interested are here made parties plaintiff or defendant.  So that a judgment in ejectment is practically as completely *res adjudicata* as in any other class of litigation.  Our construction, then, of the statute of 1881, is that it simply enlarged the remedies of the owner of the true title by enabling him to apply for equitable relief even when out of possession, but that it did

not mean that he need not bring himself within the well-settled rules of chancery pleadings. Hence we are of opinion that plaintiff should have brought his action at law, or have given stronger reasons for invoking the aid of a court of equity. See Pom. Eq. Jur., §§ 130, 1399; 1 Daniell, Ch. Pr. *4; *Frost* v. *Spitley,* 121 U. S. 552, 7 Sup. Ct. Rep. 1129; *United States* v. *Wilson,* 118 U. S. 86, 6 Sup. Ct. Rep. 991; *Curtis* v. *Sutter,* 15 Cal. 259, 264; *Van Winkle* v. *Hinckle,* 21 Cal. 342; *King* v. *Carpenter,* 37 Mich. 363; *Moran* v. *Palmer,* 13 Mich. 367; *Ormsby* v. *Barr,* 22 Mich. 80, *Climer* v. *Hovey,* 15 Mich. 18; and *Tabor* v. *Cook,* 15 Mich. 322; *Methodist Church* v. *Clark,* 41 Mich. 730, 3 N. W. 207. See, also, *McGuire* v. *Circuit Judge,* 69 Mich. 593, 37 N. W. 568.

The learned counsel for the appellant has called the especial attention of this court to the case of *Holland* v. *Challen,* 110 U. S. 15, 3 Sup. Ct. Rep. 495,—a suit founded on the Nebraska statute of 1873, a statute similar to the Arizona statute of 1881. Counsel claim that the pleadings in that case were in no material respect different from the pleadings in the present case. But we think different. In that case plaintiff claimed title by virtue of a tax sale,—an appropriate head of equitable cognizance. Prior to the sale defendant had been the owner. There the plaintiff in his bill of complaint, not only alleged that he was the owner of the premises in fee, but he also alleged that he was entitled to the possession thereof, and set forth the origin of his title, particularly specifying the deeds by which it was obtained, etc., and that the claim of defendant so affected plaintiff's title as to render a sale or other disposition of the property impossible; in other words, that defendant's claim was a cloud upon plaintiff's title. But there is this additional marked difference: Judge Field, in delivering the opinion of the court, assigns as the conclusive reason and justification for the intervention of equity the fact that the lands in dispute were unoccupied, wild, and uncultivated, and that, therefore, an action in ejectment would not lie, because there was no occupant; thus clearly intimating that ejectment would

have been the proper remedy if the defendant had been in possession. In the case at bar the defendants are in possession, and therefore the action of ejectment would certainly lie. However, in the case of *Frost* v. *Spitley,* 121 U. S. 552, 7 Sup. Ct. Rep. 1129, in a suit under this identical Nebraska statute of 1873, Mr. Jutice Gray, in delivering the opinion of the court, said: "By reason of that statute a bill in equity to quiet title may be maintained in the circuit court of the United States for the district of Nebraska by a person not in possession, if the controversy is one in which a court of equity alone can afford the relief prayed for." The case of *Clark* v. *Smith,* 13 Pet. 195, is unlike this case also, for the reason that that was a case arising under the Kentucky statute regulating proceedings in courts of chancery. That law required both legal title and possession to be in the plaintiff. The complaint in that case also showed an appropriate subject for equitable adjudication. It asked to have the defendant's patents to the land in controversy, issued years subsequent to the issuing of complainant's ancestor's patents and survey of the same land, set aside, or to compel the defendant to release the title derived thereby. The learned counsel also refer us to the case of *Reynolds* v. *Bank,* 112 U. S. 405, 5 Sup. Ct. Rep. 213; but that was a suit also involving an appropriate head of equity jurisdiction, viz., certain mortgage transactions between the plaintiff, Reynolds, and the bank. The bill, which was a long one, after alleging the execution of the mortgages by the plaintiff to the defendant, further alleged that Reynolds subsequently was declared a bankrupt. Bankruptcy is also an appropriate head of equity. The court below found the equities of the case to be with the defendant and appellees; and Mr. Justice Woods affirmed the decree in equity rendered at *nisi prius,* holding that the averments in the complaint, and the facts adduced at the trial, justified such a decree.

In the case at bar we think there was no error in the ruling of the court below, and therefore its judgment is affirmed.