[*Civil No.* 233.   Filed January 19, 1889.]

[20 Pac. 189.]

## DOLORES ASTIAZARAN et al., Plaintiffs and Appellants, v. SANTA RITA LAND AND MINING COMPANY, Defendant and Appellee.

1. PUBLIC LANDS—MEXICAN GRANTS—JURISDICTION—COURTS—SURVEY-OR-GENERAL—ACT OF JULY 22, 1854—ACT OF JULY 15, 1870, 16 U. S. STATS. AT LARGE, 291, CITED AND CONSTRUED.—Congress has conferred no jurisdiction on the courts of the territory to determine the validity of Spanish or Mexican grant. The statutes, *supra,* invest the surveyor-general with power to settle, primarily, these questions.

2. ACTION TO QUIET TITLE—PLEADING—MUST SHOW EQUITY—DISTINCTION BETWEEN LAW AND EQUITY PRESERVED—ELY v. RAILROAD CO., 2 ARIZ. 420, 19 PAC. 6, APPROVED.—A complaint in an action to quiet title must aver facts to bring the complainant under some head of equitable relief. The distinction between law and equity in this class of cases is still preserved.

AFFIRMED.—148 U. S. 80, 37 L. Ed. 376, 13 Sup. Ct. Rep. 457.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. William H. Barnes, Judge. Affirmed.

The facts are stated in the opinion.

Jeffords & Franklin, and Rochester Ford, for Appellants.

The question of the jurisdiction of the court to entertain this action depends upon the construction of the following U. S. statutes: Act of July 15, 1870, (16 U. S. Stats. at Large, p. 291,) and the statute of 1854, therein referred to. The duty of the surveyor-general of Arizona is clearly set forth. He is "to ascertain and report upon the origin, nature, character, and extent, of the claims to land in said territory, under the laws, usages, and customs of Mexico and Spain. And for this purpose he shall have certain powers. He has those powers for no other purpose. The surveyor-general is not a tribunal nor a court; his power is merely to "ascertain and report." A tribunal or court has the power to hear and determine. The surveyor-general has no power to hear and determine. He is merely an investigating officer, who is to collect information for the benefit of Congress.

The deed of 1869 is to be construed according to the laws of Arizona in force at the time the same was made, because the lands it purports to convey are situate in Arizona. The title and disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another. *McCormick* v. *Sullivant,* 10 Wheat. 202; *Kerr* v. *Moon,* 9 Wheat. 571; *Clark* v. *Graham,* 9 Wheat. 579.

Where land is the subject of a contract, the law of the place where it is situated governs the descent, alienation, and transfer, and the effect and construction of conveyances. *Brine* v. *Insurance Co.,* 96 U. S. 636.

Haynes & Mitchell, for Appellee.

WRIGHT, C. J.—Appellants brought this action in equity for the purpose of quieting title. In their complaint appellants claim title to about 52,000 acres of land derived from a

grant made by the Mexican Government on the 19th of April, 1844, to one Francisco Alexander Aguilar. At the trial below the court dismissed the complaint, and rendered judgment for costs against appellants. Motion for new trial was duly entered, and, upon the overruling thereof, the case has been brought here by appeal.

We are of opinion that the judgment of the court below should be affirmed, for two reasons: 1. Because the court had no jurisdiction; and, 2. If it did, the complaint did not state facts sufficient to constitute a cause of action in equity, and justify no relief in equity.

In this case it is difficult for us to reconcile a reasonable construction of the act of Congress of July 15, 1870, or the act of July 22, 1854, of which it was supplemental, with the contention of appellants' learned counsel for the court's jurisdiction. Beyond question the various acts of Congress creating particular tribunals, with power, in the first instance, to carry into effect the provisions of the treaty of Guadalupe Hidalgo, and the Gadsden purchase relating thereto, conferred upon those particular tribunals, within their respective territorial jurisdictions, exclusive power to determine, primarily, all questions touching land grants under the laws of Spain and Mexico.

This whole subject originally belongs to the political branch of the government. Over it Congress has absolute dominion; and no court or tribunal has any jurisdiction over matters pertaining thereto, except such as Congress has by act designated, and then only to the extent to which it has conferred jurisdiction. As instances, Congress, by its act of 1851, conferred upon the commissioners power and jurisdiction to settle, primarily, all questions pertaining to land grants under Spanish or Mexican laws in California; and by the act of 1854, it conferred like power and jurisdiction upon the surveyor-general of New Mexico; and by the supplemental act of July 15, 1870, similar power and jurisdiction were extended to and conferred upon the surveyor-general of Arizona. Under the constitution, Congress alone can dispose absolutely of the public domain; therefore, for the *modus operandi* of its disposition, we must look to federal legislation. If there has been an expression of the legislative intent,

it is the duty of the court, as a subordinate branch of the judicial department of the government, to carry out the legislative will. Now Congress has given power to no tribunal, has conferred jurisdiction upon no forum, primarily, to pass upon and determine questions affecting the validity or invalidity of Spanish or Mexican land grants in this territory, except the surveyor-general. By the acts above referred to, he is given power, and it is made his duty, to determine, in the first instance, the validity, origin, nature, character, and extent of all these grants. This is a vast primary power; but however much we may question the wisdom and practical utility of the laws conferring upon this officer such power and jurisdiction, still the stubborn fact remains that courts have nothing to do with legislation. Perhaps the speediest and surest way to secure the enactment of a good law is the vigorous enforcement of an objectionable one. These views are so simple and familiar that it almost seems a tautological task to express them. They are but the expression of the common mind. It is unnecessary to say we make no intimation that the finding and decision of the surveyor-general are final or conclusive. They are not. But their effect is to hold in abeyance the title to the lands covered by the grant, and to withdraw them from sale or other disposition by the government, until the final action of Congress.

There might be questions not involving title, such as forcible entry and unlawful detainer,—mere questions of the right of possession,—which the courts might exercise jurisdiction to determine. And while it may be that in *Chaves* v. *Whitney,* 4 (Gild.) N. Mex. 611, 16 Pac. 608, the supreme court of New Mexico went a little too far, still there might be cases in which the territorial courts might exercise a limited jurisdiction in order to preserve the *status in quo.*

No such question, however, is presented by the record here. It is to be observed that this case seemingly overrules *Whitney* v. *McAfee,* 3 (Gild.) N. Mex. 550, 1 Pac. 173. The syllabus seems also to be sustained by the decision; but we hardly believe the court meant that the action of the surveyor-general has no legal effect whatever. Is it not true that the courts are bound by the reports of these officers until the final action thereon by Congress? Until then can the courts adjudicate

upon the titles to the lands affected by those reports? *Tameling* v. *United States Freehold etc. Co.*, 93 U. S. 661, does not, we think, fully support the position that the decision and report of the surveyor-general are not binding upon the courts of New Mexico until confirmed by Congress. Can it be that, until Congress confirms these reports, they have no legal effect whatever? What tribunal is clothed with absolute authority to determine, in the first instance, not only the validity, but the origin, nature, character, and extent of land claims of Spanish or Mexican origin in New Mexico, if not the office of the surveyor-general? Certainly, if he has this power, his acts are of some legal effect, and the courts there as well as elsewhere are bound by them.

But the appellants, by their learned counsel, insist that as the grant of the lands in question by the Mexican Government to the elder Aguilar in 1844 was a perfect grant; and as there have been since the Gadsden purchase sundry mesne conveyances of the lands included in the grant by the said Aguilar or those claiming under him, the court had jurisdiction to pass upon these various conveyances, and to adjudicate upon the rights of the parties thereunder, notwithstanding the surveyor-general of this territory had ascertained the origin, nature, character, and extent of said grant, and had rendered his decision thereon, had reported to Congress, and there had been no final action by Congress upon that report. We do not think this position tenable. Suppose the court had assumed jurisdiction, and had adjudicated upon the rights of the parties, had passed upon and judicially construed these various conveyances, and decided that one party or the other owned the lands in fee; then suppose Congress had passed an act not confirming the report of the surveyor-general, but declaring the said grant to the elder Aguilar invalid: what would the decision of the court have been worth? Again, suppose the court had decreed title to these lands in one party, and the action of Congress confirms the title to the other party, can it be for a moment doubted that the action of the court would be worse than a nullity? Would not the other party own the lands in the face of the court's decree?

It seems to us indisputable that, until Congress acts upon

the decision and report of the surveyor-general, the courts
cannot pass upon any questions involving the title to lands of
Spanish or Mexican origin, prior to the Gadsden purchase;
and to pass upon questions as to the nature, character, legal-
ity, etc., of these conveyances, would necessarily be to pass
upon questions involving the validity or invalidity of a Mexi-
can land grant. By the sixth article of the Gadsden purchase,
the United States expressly refused to be obligated or bound
by any Spanish or Mexican grant "that had not been located
and duly recorded in the Mexican archives." So that it is
titles under valid grants only that Congress will confirm, and,
unless attacked directly for fraud or mistake, the courts will
not review the action of land-officers. When the questions
cease to be matters of Congressional cognizance, and are rele-
gated to the domain of private rights, then the jurisdiction
of the courts would attach; not to the extent, however, of
exercising power or jurisdiction to review or modify Con-
gressional action on the decision and report of the surveyor-
general. We do not believe the action of this officer is subject
to collateral attack, it being a principle of law, well recog-
nized, that where a special tribunal is authorized to hear
and determine certain matters arising in the course of its
duties, its action, when confined to the scope of its authority,
is conclusive, unless changed or modified by paramount
authority.

But it is claimed by appellants that the surveyor-general
exceeded his authority in making his report. If so, should
not this claim be established before the Congress of the Uni-
ted States, and thus prevent Congressional action confirming
that report? If he exceeds his authority, would that justify
the court's interference? But we cannot see that the surveyor-
general in this case exceeded his statutory authority. Should
the court have passed upon these mesne conveyances, and thus
determined who had properly derived title under the original
grant from the elder Aguilar? Could the court determine
whether any title descended or had been acquired from him,
without first determining whether he, himself, had any title?
Would it not thus be incumbent upon the court to determine
the validity of the original grant? Can the stream rise above
its source? or, rather, will not the source largely determine

the character of the waters? And will not the original source of title in a great measure characterize all deraignments under it? Hence we say the courts cannot act until Congress acts upon the surveyor-general's report. Until then, it is not subject to review in any forum. If this be so, the court below had no jurisdiction, and rightly dismissed the bill. See *Johnson* v. *Towsley,* 13 Wall. 72; *Tameling* v. *United States Freehold etc. Co.,* 93 U. S. 661; *Maxwell Land-Grant Case,* 121 U. S. 325, 7 Sup. Ct. Rep. 1015; *Whitney* v. *McAfee,* 3 (Gild.) N. Mex. 550, 1 Pac. 173.

We do not think the averments in the complaint were sufficient to constitute a cause of action, according to the well-established rules of equity pleading, or justified equitable relief. In the case of *Ely* v. *Railroad Co.,* 2 Ariz. 420, 19 Pac. 6, this court held that while the Arizona statute of 1881 contravened the old equity rule that a party must be in possession before he could maintain a peace bill or an action *quia timet,* still it was necessary for the plaintiff in his complaint to have brought himself under some head of equitable remedy; and that, where the complaint on its face revealed a clear and adequate remedy at law, the plaintiff must resort to legal, and not equitable, tribunals. The complaint in that case was quite similar to the one at bar. In neither was it averred that plaintiff was in possession, or was even entitled to possession, or that defendant's claim was a cloud upon their title, or any other fact invoking equity cognizance.

The supreme court of Texas has gone far towards abolishing the distinction between law and equity in this class of cases. The greater weight of authority, however, is still, we think, in favor of preserving the distinction, and the fundamental rule is still in vogue. That rule, as laid down in Mr. Pomeroy's Equity Jurisprudence, is that, "in order that a cause may come within the scope of the equity jurisdiction, one of two alternatives is essential,—either the primary right, estate, or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or the remedy granted must be in its nature purely equitable, or, if it be a remedy which may also be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and ade-

quate through the equitable modes of procedure." Section 130.

For the reasons assigned in *Ely* v. *Railroad Co.*, we must hold that the complaint in this case does not state facts sufficient to constitute a cause of action in equity.⸱ See also *Gage* v. *Curtis*, 122 Ill. 520, 14 N. E. 30, and *Curry* v. *Peebles*, 83 Ala. 225, 3 South. 622.

Without deeming it necessary to consider other questions raised, the judgment of the district court is affirmed.

BARNES, J.—I concur with the decision, as I hold that a Mexican grant is not legal title to sustain action of ejectment or bill to quiet title. Such grant must be confirmed by Congress first.

PORTER, J.—Congress having provided a special tribunal for the adjudication of these claims, this court has no jurisdiction to determine titles to the lands. I concur in the judgment.