[Local Law.]

## DE LA CROIX against CHAMBERLAIN.

A *concession* of lands made by the Spanish authorities at Mobile in the year 1806, cannot be given in evidence to support an ejectment in the Courts of the United States, the same not having been recorded, or passed upon by the board of commissioners, or register of the land office, established by the acts of Congress, relating to land titles in that country.

This cause was argued by Mr. *E. Livingston* for the *March 1st.* plaintiff, and by Mr. *Owen* for the defendant.

Mr. Justice TRIMBLE delivered the opinion of the Court. *March 14th.*

This was an action of ejectment brought by the plaintiff in error against the defendant, in the District Court of the United States for the district of Alabama. The plaintiff excepted to certain opinions of the Court given in the progress of the trial, and his exceptions having been signed and sealed by the judge, a verdict and judgment was rendered against him; which judgment and exceptions are brought before the Court by writ of error.

The questions in the case arise entirely out of the bill of exceptions. It states, that " the plaintiff claimed the land in the declaration mentioned as devisee of the late Francis Collell, and offered in evidence, as the first link in the chain of his title, a concession from the Spanish government to the said Francis Collell, a copy of which is annexed to the bill of exceptions. The Court decided that the concession offered in evidence by the plaintiff, being no higher evidence of title than a warrant or order of survey, would not support an ejectment. The plaintiff offered no other title than that above mentioned in evidence. The Court decided, also, that the signature of the granting officer of the Spanish government, (the intendant, as well as the assisting officers,) must be proved." These are the opinions excepted to by the plaintiff. A history of the case, somewhat different, is given by the clerk in the transcript of the record sent up. But it was no part of his duty, nor had he authority, as clerk,

to state upon the record what was offered in evidence on the trials, or what opinions were expressed by the Court in relation to the evidence, otherwise than as stated in the bill of exceptions itself. The evidence given on the trial of an issue at common law is no part of the record, unless made a part of it by bill of exceptions, demurrer to evidence, or case agreed by parties, and entered of record. Nor are the opinions of the Court, given incidentally, in the progress of the trial, except so made by bill of exceptions, any part of the record. The statements of the clerk, so far as they are contrary to the statements verified by the seal of the judge, must be wholly disregarded.

The concession referred to in the bill of exceptions is, upon its face, not a grant, nor a survey, but it is, as is expressed in the bill of exceptions, only a warrant, or order, authorizing the deputy surveyor to make a survey, and to report the survey when made to the intendant, in order to found a grant upon it. The order of survey bears date the    day of       1806. At that date the Spanish authorities were in the actual possession of Mobile, where the land lies; and they claimed it as part of the Floridas, then belonging to the Spanish crown. The United States claimed it as part of Louisiana. But it is not necessary to investigate these conflicting claims. The United States have since obtained the Floridas by purchase and cession from Spain, without having previously settled the controverted boundary between the Floridas, as claimed by Spain, and Louisiana, as claimed by the United States.

A question of disputed boundary between two sovereign independent nations, is, indeed, much more properly a subject for diplomatic discussion, and of treaty, than of judicial investigation. If the United States and Spain had settled this dispute by treaty, before the United States extinguished the claim of Spain to the Floridas, the boundary fixed by such treaty would have concluded all parties. But as that was not done, the United States have never, so far as we can discover, distinguished between the concessions of land made by the Spanish authorities within the disputed territory, whilst Spain was in the actual possession of it, from concessions of a similar character made by Spain within the ac-

knowledged limits. We will not, therefore, raise any question upon the ground of the want of authority in the intendant to make the concession. No question of that sort seems to have been made in the Court below. Assuming, then, the authority of the Spanish intendant to make the concession and warrant of survey, the question made and decided in the District Court fairly arises, was it a sufficient title to recover upon in the action of ejectment? If the concession had been made in a country where, at the time, the principles and practices known to the common law prevailed, it would not bear a contest. It would be regarded, at most, as an incipient, inchoate right, but not a perfect legal estate. It would not be such title as would maintain an action of ejectment.

Was it a perfect legal estate, was it title, according to the Spanish law, which prevailed at Mobile at the time it was made? We apprehend not. It shows, upon its face, that other acts of sovereignty remained to be done to perfect the title, and which the sovereign power might withhold. A survey was to be made, and, according to the laws and usages of Spain, a formal grant was to be made, in such cases, to complete the title.

It may be admitted, that the United States were bound, in good faith, by the terms of the treaty of cession, by which they acquired the Floridas, to confirm such concessions as had been made by warrants of survey; yet, it would not follow, that the legal title would be perfected until confirmation. The government of the United States has, throughout, acted upon a different principle in relation to these inchoate rights, in all its acquisitions of territory, whether from Spain or France. Whilst the government has admitted its obligation to confirm such inchoate rights or concessions as had been fairly made, it has maintained, that the legal title remained in the United States, until, by some act of confirmation, it was passed, or relinquished to the claimants. It has maintained its right to prescribe the forms and manner of proceeding in order to obtain a confirmation, and its right to establish tribunals to investigate and pronounce upon their fairness and validity. This is demonstrated by

1827.

De la Croix
v.
Chamberlain

the laws which Congress have repeatedly passed, establishing boards of commissioners to investigate these claims, and to reject or confirm them, or report them to Congress in cases of doubt ; and by the acts of Congress requiring all such claims to be recorded within prescribed periods. It does not appear that this order of survey has ever been recorded or passed upon by the board of commissioners, or register of the land office, established by Congress in the district in which the land lies. It can, therefore, derive no aid from the laws of the United States.

A law of Alabama was mentioned in the argument, as having some bearing on the case. That law provides, " that all certificates issued in pursuance of any act of Congress, by any of the boards of commissioners, register of the land office, &c. upon any warrant or order of survey, &c. for any lands, &c. shall be taken and received as vesting a full, complete, and legal title, &c. so far as to enable the holder of such certificate to maintain any action," &c. This case is not brought within the provisions of this law ; for it does not appear that any such certificate had been issued thereon.

It was insisted by the plaintiff's counsel, that, admitting the order of survey was not in itself title, still the judgment ought to be reversed, because, as the bill of exceptions states, " that the plaintiff, offered the order of survey in evidence as the first link in his chain of title ;" the opinion of the Court precluded him from offering other evidence of title—as, for example, a survey or grant founded on the order of survey. This argument proceeds upon a mistake. The expressions in the bill of exceptions, that he offered the order of survey " as the first link in the chain of his title," do not import, as the argument supposes, that he had, or might have, a survey or grant to offer, in addition to the warrant of survey. The words refer to the statement, that the plaintiff claimed as devisee of Mr. Collell, and mean, that after offering Collell's title, or the warrant of survey granted to Collell, as the first link in the chain of his (the plaintiff's) title, he intended to go on and complete the chain from that first link, by proof to establish the second link, namely, his title as devisee. This is evident

from what is afterwards stated, that he offered " no other title than the order of survey."

Again; the Court does not reject the order of survey, and exclude it altogether as evidence; but assuming that the paper offered is evidence of the party being proprietor of the order of survey; the Court decided, that such order of survey was not title to recover on in the action of ejectment. It was a decision, not upon the admissibility of the order of survey as evidence, but upon its legal effect when admitted.

It is not easy to comprehend the object of the latter statement in the bill of exceptions, " that the Court decided the signatures, &c. ought to be proved." It does not say they were not proved. It does not state that the paper was rejected because the signatures were not proved. But if the bill of exceptions had so stated, we think the exception on that ground could not be maintained. The warrant of survey does not appear to have been recorded; it purported to be the act of foreign officers, and was not verified by the great seal of the nation to which they belonged, or any other authoritative official seal, which was either known, or could be proved. The Court and jury could not be presumed cognizant of their signatures. How, then, could the genuineness and authenticity of the document be proved, otherwise than by proof of the signatures of the officers by whom it purported to be made? It was not of that class of public instruments which prove themselves, and, consequently, it ought to be proved in the mode ordinary instruments are required to be verified by the rules of evidence.

Judgment affirmed. with costs.