## ASTIAZARAN v. SANTA RITA LAND AND MINING COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 43. Submitted December 8, 1892. — Decided March 6, 1893.

By the acts of July 22, 1854, c. 103, § 8, and July 15, 1870, c. 292, a private claim to land in Arizona under a Mexican grant, which has been reported to Congress by the surveyor general of the Territory, cannot, before Congress has acted on his report, be contested in the courts of justice.

THE case is stated in the opinion.

*Mr. Rochester Ford* for appellants.

*Mr. A. T. Britton* and *Mr. A. B. Browne* for appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a complaint filed June 25, 1887, in a district cour of the Territory of Arizona and county of Pima, by Dolore G. Astiazaran and others, against the Santa Rita Land and Mining Company and the New Mexico and Arizona Railroac Company, to quiet the plaintiffs' title in three tracts of land. known as ranchos Tumacacori, Calabasas and Huevavi, granted by the Mexican government to Francisco Alejandro Aguilar in 1844.

The plaintiffs claimed title as or under the heirs of Aguilar The defendants claimed under alleged conveyances from

Aguilar to Manuel Maria Gandara in 1856 and 1869, from Gandara to Charles P. Sykes in 1877, from Sykes of an undivided interest to John Curry in 1878, and from Sykes and Curry on December 18, 1879, of the whole interest to the Calabasas Land and Mining Company, whose title had since vested in the defendants.

On June 9, 1864, Gandara presented a petition to the surveyor general for the Territory of Arizona for a survey of the lands, in order that the title might be reported on and confirmed, in accordance with the treaty of Guadalupe Hidalgo of 1848 and the Gadsden treaty of 1853, and the laws of the United States.

On December 15, 1879, Curry and Sykes presented a similar petition to the surveyor general, who on January 7, 1880, made a report to Congress, recommending a confirmation of their title. Congress never took final action upon this recommendation.

The district court gave judgment for the defendants, which was affirmed by the Supreme Court of the Territory on January 19, 1889. 20 Pacific Rep. 189. The plaintiffs appealed to this court.

By article 8 of the treaty of Guadalupe Hidalgo, and article 5 of the Gadsden treaty, the property of Mexicans, within the territory ceded by Mexico to the United States, was to be "inviolably respected," and they and their heirs and grantees were "to enjoy with respect to it guaranties equally ample as if the same belonged to citizens of the United States." 9 Stat. 929, 930; 10 Stat. 1035.

Undoubtedly, private rights of property within the ceded territory were not affected by the change of sovereignty and jurisdiction, and were entitled to protection, whether the party had the full and absolute ownership of the land, or merely an equitable interest therein, which required some further act of the government to vest in him a perfect title. But the duty of providing the mode of securing these rights, and of fulfilling the obligations imposed upon the United States by the treaties, belonged to the political department of the government; and Congress might either itself discharge that duty, or delegate it

to the judicial department. *De la Croix* v. *Chamberlain*, 12 Wheat. 599, 601, 602; *Chouteau* v. *Eckhart*, 2 How. 344, 374; *Tameling* v. *United States Freehold Co.*, 93 U. S. 644, 661; *Botiller* v. *Dominguez*, 130 U. S. 238.

For the adjustment and confirmation of claims under grants from the Mexican government of land in New Mexico, and in Arizona, which was formerly a part of it, Congress had not, when this case was decided below, established a judicial tribunal, as it had done in California, and as it has since done in New Mexico and Arizona by the act of March 3, 1891, c. 539, 26 Stat. 854.

But Congress reserved to itself the determination of such claims; and enacted that the surveyor general for the Territory, under the instructions of the Secretary of the Interior, should ascertain the origin, nature, character and extent of all such claims; and for this purpose might issue notices, summon witnesses, administer oaths and do all other necessary acts; and should make a full report on such claims, with his decision as to the validity or invalidity of each under the laws, usages and customs of the country before its cession to the United States; and that his report should be laid before Congress for such action thereon as might be deemed just and proper, with a view to confirm *bona fide* grants, and to give full effect to the treaty of 1848 between the United States and Mexico. Acts of July 22, 1854, c. 103, § 8, 10 Stat. 309; July 15, 1870, c. 292, 16 Stat. 304.

In *Tameling* v. *United States Freehold Co.*, above cited, it was therefore held that the action of Congress, confirming, as recommended by the surveyor general for the Territory, a private land claim in New Mexico, was conclusive evidence of the claimant's title, and not subject to judicial review; and Mr. Justice Davis, in delivering the opinion of the court, said : " No jurisdiction over such claims in New Mexico was conferred upon the courts ; but the surveyor general, in the exercise of the authority with which he was invested, decides them in the first instance. The final action on each claim, reserved to Congress, is, of course, conclusive, and therefore not subject to review in this or any other forum. It is obvi-

ously not the duty of this court to sit in judgment upon either the recital of matters of fact by the surveyor general, or his decision declaring the validity of the grant. They are embodied in his report, which was laid before Congress for its consideration and action." 93 U. S. 662. See also *Maxwell Land Grant Case*, 121 U. S. 325, 366, and 122 U. S. 365, 371.

The action of Congress, when taken, being conclusive upon the merits of the claim, it necessarily follows that the judiciary cannot act upon the matter while it is pending before Congress; for if Congress should decide the same way as the court, the judgment of the court would be nugatory; and if Congress should decide the other way, its decision would control.

There is nothing in *Pinkerton* v. *Ledoux*, 129 U. S. 346, cited by the appellant, inconsistent with this conclusion. The point there decided was that the report of the surveyor general, not acted on by Congress, was no evidence to support ejectment upon a grant from the Mexican government, known as the Nolan grant; and Mr. Justice Bradley, in delivering judgment, said : "The surveyor general's report is no evidence of title or right to possession. His duties were prescribed by the act of July 22, 1854, before referred to, and consisted merely in making inquiries and reporting to Congress for its action. If Congress confirmed a title reported favorably by him, it became a valid title ; if not, not." And he guardedly added : "This case seems to have been very perfunctorily tried and discussed. There is a question which may be entitled to much consideration, whether the Nolan title has any validity at all without confirmation by Congress. The act of July 22, 1854, before referred to, seems to imply that this was necessary." 129 U. S. 351, 352, 355.

The case is one of those, jurisdiction of which has been committed to a particular tribunal, and which cannot, therefore, at least while proceedings are pending before that tribunal, be taken up and decided by any other. *Johnson* v. *Towsley*, 13 Wall. 72; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.*, 106 U. S. 447; *New Orleans* v. *Paine*, 147 U. S. 261.

In this case, Congress has constituted itself the tribunal to

.finally determine, upon the report and recommendation of the surveyor general, whether the claim is valid or invalid.   The petition to the surveyor general is the commencement of proceedings, which necessarily involve the validity of the grant from the Mexican government under which the petitioners claim title; the proceedings are pending until Congress has acted; and while they are pending, the question of the title of the petitioners cannot be contested in the ordinary courts of justice.

Upon this short ground, without considering any other question, the judgment of the Supreme Court of the Territory of Arizona is

*Affirmed.*

MR. JUSTICE BREWER concurred in the result.