[Civil No. 376.    Filed January 29, 1894.]

[36 Pac. 213.]

SANTIAGO AINSA, Administratrix with the Will Annexed of the Estate of FRANK ELY, Deceased, Plaintiff and Appellant, v. NEW MEXICO AND ARIZONA RAILROAD COMPANY, Defendant and Appellee.

1. MEXICAN GRANTS — COURTS — JURISDICTION TO DETERMINE PRIVATE CLAIM TO LAND UNDER.—A private claim to land in Arizona under an unconfirmed Mexican land grant cannot be contested in the local courts of justice where no proceedings are pending before Congress, the surveyor-general of the United States, or the private land court of March 3, 1891.

2. SAME—TITLE—POWER TO SETTLE RESERVED BY CONGRESS—MUST BE CONFIRMED BEFORE LOCAL COURTS HAVE JURISDICTION.—Congress has reserved to itself in Arizona the power of settling titles to Mexican land grants, and has delegated its power to the private land court. Congress must in some way confirm this class of grants before this court may have jurisdiction thereof.

3. SAME—COURTS—JURISDICTION—NONE CONFERRED ON LOCAL COURTS BY 26 U. S. STATS. AT L. 854.—The act of March 3, 1891, *supra,*

does not authorize this court to settle the title to Mexican land grants.

4. SAME—JUDICIAL NOTICE—EXECUTIVE ACTS—HOMESTEADS AND PRE-EMPTIONS.—This court must recognize and take judicial notice of the acts of the executive department of the government in allowing the entry of homesteads and pre-emptions in preference to the unconfirmed title of a Mexican land grant.

REVERSED.  175 U. S. 76, 44 L. Ed. 78, 20 Sup. Ct. Rep. 28.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. Richard E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

Rochester Ford, and S. M. Franklin, for Appellant.

Under the Gadsden treaty complete title to land needed no legislative confirmation, and the owners of such titles may assert them in the ordinary form of law upon the documents under which they claim. *United States v. Pillerin,* 13 How. 9; *United States v. McCullagh,* 13 How. 216; *United States v. Roselius,* 15 How. 36; *Fremont v. United States,* 17 How. 553; *McGuire v. Tyler,* 8 Wall. 650; *Trenier v. Stewart,* 101 U. S. 797.

The grant under which plaintiff claims is a complete and perfect title and vested the fee in the grantee. *United States v. Turner,* 11 How. 663; *United States v. Watkins,* 97 U. S. 219; *Carpentier v. Montgomery,* 13 Wall. 480; *United States v. Knight's Admr.,* 1 Black, 227; *Phelan v. Poyorena,* 74 Cal. 448, 13 Pac. 681, 16 Pac. 241; *United States v. Pico,* 5 Wall. 538; *Malarin v. United States,* 1 Wall. 282; *United States v. Pacheco,* 22 How. 225; *Cameron v. United States,* 148 U. S. 301, 13 Sup. Ct. Rep. 595.

William Herring, for Appellee.

HAWKINS, J.—This was an action filed in the district court of the first judicial district of the territory of Arizona in and for the county of Pima, on the first day of June, 1892, to quiet the plaintiff's title to the certain tract of land described in the complaint, known as and called the "Rancho San José De Sonoita," situate in the Sonoita Valley, in Pima

County, Arizona Territory, plaintiff's decedent claiming under a Mexican grant to Don Leon Herreros, dated May 25, 1825. Defendant claims a right of way through said premises by virtue of certain mesne conveyances from certain persons who had settled on portions of the lands conveyed by said grant, claiming same to be public lands of the United States. The cause was submitted to the court below on an agreed statement of facts showing: 1. The copy of the grant papers, and admitting that the same was made, executed, and delivered to the grantee named therein, and by the persons and officials when, where, and by whom it purports to have been signed, made, executed, and delivered; that the plaintiff (appellant) herein is the vendee and assignee of, and has acquired all the right, title, and interest of the original grantee thereof; 2. That claimant under said grant filed on December 29, 1879, under acts of Congress of July 22, 1854, and July 15, 1870, a petition for the confirmation of said grant; that said petition was never acted upon by Congress, and that at the institution of this suit no proceedings for the confirmation of said grant were pending before any surveyor-general of the United States, or before Congress, or before the court of private land claims created by act of Congress of March 3, 1891; 3. That prior to this action certain persons had entered upon land within the limits of plaintiff's grant as pre-emption or homestead settlers, claiming said lands to be public lands of the United States; that thereafter, and before the commencement of this suit, by condemnation proceedings against and sundry mesne conveyances from said persons, the defendant acquired and now claims a right of way through said several tracts of land so settled upon, which right of way is within the limits of the said grant. And the court held that it had no jurisdiction of the subject-matter of said suit, and dismissed plaintiff's complaint.

The record shows that the Mexican grant claimed by plaintiff had not been confirmed by Congress. The question for us to consider seems to be, Can a private claim to land in Arizona under an unconfirmed Mexican land grant be contested in the local courts of justice where no proceedings are pending before Congress, the surveyor-general of the United States, or the private land court of March 3, 1891? *Astiazaran* v. *Mining Co.*, 148 U. S. 80, 13 Sup. Ct. Rep. 457, settles

the question that no such action could be maintained if the claim had been 'reported to Congress by the surveyor-general, if commenced before Congress had acted thereon. But appellant contends that under the Gadsden treaty complete or perfect titles to land needed no legislative confirmation, and the owners of such titles may assert in the ordinary forms of law upon the documents under which they claim, and cites numerous authorities to support said position, all of which seem to us to be under different treaties, and where Congress had given the courts certain jurisdiction. Appellant also contends that the grant under which he claims is a complete and perfect title, and vested the fee in the grantee. Who is to decide this question? Under the treaty, Congress seems to have reserved this right to itself. It provided a mode of settling the property rights of these grants by acts of July 22, 1854, and July 15, 1870, and since by the act of March 3, 1891, (26 Stats. 854). It was the duty of Congress under the treaty to protect these rights. It could do so itself or delegate the power to the judicial department. *Botiller* v. *Dominguez,* 130 U. S. 238, 9 Sup. Ct. Rep. 525, and numerous cases therein reviewed. In the case of grants in the state of California this was done by Congress delegating its power to commissioners by act of March 3, 1851. In New Mexico and Arizona Congress reserved to itself the determination of such claims (sec. 8, 10 Stats. 309 ; 16 Stats. 304) until it passed the act of March 3, 1891, (26 Stats. 854). Appellant wants us to consider his grant as being under the provisions of section 8, or rather of the first paragraph of section 8, of the last-mentioned act; that is, one "that was complete and perfect when the United States acquired sovereignty," and not under section 6 of said act. Suppose we should do so, and order the title quieted, and some of the settlers thereon should get the attorney-general to commence an action in the land court against the owner of the grant under said section 8, and that court should hold said grant of no avail, then of what force would our decree be? Congress in providing a remedy for settling these disputed titles has nowhere delegated any authority to the courts to settle same. It has reserved to itself the power of settling such titles, and has delegated its power to the land court. It is not our province to usurp the functions of the "political department" of the government (*De La Croix* v. *Chamberlain,* 12 Wheat.

602) or of its delegate, the private land court. After proper confirmation, either by Congress or its land court, we could grant the relief asked for, and not till then. Why should we treat this grant as valid when it appears from the agreed statement of facts that the executive department has heretofore allowed homestead and pre-emption claimants to enter land embraced therein? Are we to say that department has been violating a treaty of the United States with Mexico? It was for Congress to pass laws for the enforcement of these treaties with Mexico. It has repeatedly done so. Acts July 22, 1854, (10 Stats. 309); July 15, 1870, (16 Stats. 304); Commissioners' Act, 1851, to settle such titles in California; and, finally, Act, March 3, 1891, (26 Stats. 854). If, as the appellant contends, the acts of 1854 and 1870 were repealed by act of March 3, 1891, still this last act does not authorize us to settle the title to Mexican land grants. He may still apply to Congress, if he does not want to apply to the land court. Congress must in some way confirm this class of Mexican grants before we have jurisdiction thereof. *Botiller* v. *Dominguez*, 130 U. S. 238, 9 Sup. Ct. Rep. 525. We must recognize and take judicial notice of the acts of the executive department of the government in allowing the entry of homesteads and pre-emptions in preference to the unconfirmed title of a Mexican land grant. The judgment is affirmed.

Baker, C. J., and Rouse, J., concur.