[Civil No. 1250.  Filed November 2, 1912.]

[127 Pac. 733.]

CRITTENDEN CATTLE COMPANY, a Corporation, OS-
CAR ASHBURN, MANUEL FRANCO and GILBERTO
PEREZ, Appellants, v. SANTIAGO AINSA, Adminis-
trator With Will Annexed of the Estate of FRANK
ELY, Deceased, Appellee.

1. ADVERSE POSSESSION—THREE-YEAR STATUTE—TITLE.—The three-year
statute of limitation did not apply where defendants failed to show
a title from or under the sovereignty of the soil, either regular or
irregular.

2. ADVERSE POSSESSION — PUBLIC LAND GRANT — COMMENCEMENT OF
LIMITATIONS—PATENT.—Plaintiff deraigned title to land in contro-
versy from the Mexican government by grant dated May 15, 1824.
The land was a part of the Gadsden purchase, and was a complete
and perfect grant before the date of the purchase on December
30, 1879.  The owner filed in the office of the United States sur-
veyor general for the territory of Arizona his petition for confirma-
tion, as provided by Act Cong. June 22, 1854, chapter 103, section
8, 10 Stat. 309, and Act Cong. July 15, 1879, chapter 292, 16 Stat.
291, and on January 14, 1880, the surveyor general reported the
grant to Congress, and recommended its confirmation.  Congress
failed to act on the report, and on March 3, 1891, created the court
of private land claims, and conferred on it jurisdiction to hear
and determine questions of the existence, boundaries, and extent
of private grants in New Mexico and Arizona.  In September, 1892,
the United States instituted a suit in such court against plaintiff
to have the title to the grant settled and determined and the extent
of the boundaries adjudicated, and in October, 1897, the grant
was held valid to the extent of a part only of the area claimed,
on which judgment the court of land claims, on April 12, 1904,
entered an order approving the survey of the grant under direction
of the Secretary of the Interior, and on October 29, 1906, a patent
was issued by the United States to the original grantee, his heirs
and assigns.  *Held*, that limitations did not begin to run against
the holder of the grant or his assigns prior to the issuance of the
patent.

APPEAL from a judgment of the District Court of the
Second Judicial District in and for the county of Santa Cruz.
Fletcher M. Doan, Judge.  Affirmed.

The facts are stated in the opinion.

Mr. John B. Wright, for Appellants.

. Mr. S. M. Franklin, for Appellee.

ROSS, J.—Appellee, as administrator, instituted this action to quiet his title to the San Jose de Sonoita grant. Appellant Crittenden Cattle Company admits title in appellee to all of the grant except certain portions thereof, which portions it claims to own by being in adverse possession the necessary time under the Arizona statute of limitations. The other defendants filed disclaimers.

Appellee deraigns title to the grant from the Mexican government dated May 15, 1824. This grant was a part of the "Gadsden purchase," and was a complete and perfect grant before the purchase. *Ely's Admr.* v. *United States,* 171 U. S. 220, 43 L. Ed. 142, 18 Sup. Ct. Rep. 840.

On December 30, 1879, the owner of said grant filed in the office of the United States surveyor general of the territory of Arizona his petition praying for the confirmation to him of said San Jose de Sonoita grant, accompanying which petition were the original title papers .of said grant, in an effort to conform with the terms of the Acts of July 22, 1854, chapter 103, section 8, 10 Stat. 308, 309, and of July 15, 1879, chapter 292, 16 Stat. 291, 304. January 14, 1880, the surveyor general reported said grant to the Congress of the United States and recommended its confirmation to the extent of one and three-fourths square leagues. The Congress failed to act on this report. March 3, 1891, Congress passed an act creating the court of private land claims (26 Stat. 854), and conferred on this court the jurisdiction to hear and determine questions of the existence, boundaries, and extent of private grants in New Mexico and Arizona. In September, 1892, the United States instituted a suit in the court of private land claims against Ainsa, administrator, et al., to have the title to the Sonoita grant "settled and determined, and if the title be adjudicated to be valid, that the extent and boundaries thereof be then settled and adjudicated." In October, 1897, the Sonoita grant was held valid by the supreme court of the United States to the extent of one and three-fourths sitios. *Ely's Admr.* v. *United States,* 171 U. S. 220, 43 L. Ed. 142, 18 Sup. Ct. Rep. 840. August 6, 1902,

a decree of confirmation was made and entered in the court of private land claims in conformity with the judgment of the United States supreme court confirming appellee's title to 5,123.42 acres. April 12, 1904, the court of private land claims entered its order approving survey of grant made under direction of the Secretary of the Interior. October 29, 1906, patent to grant was issued to original grantee, his heirs, successors, and assigns. This suit was instituted in November, 1909.

The appellant and its predecessors in interest have occupied and used the portions of the grant here in controversy for more than ten years before the institution of this suit, and it claims title by virtue of the three, five, and ten year statutes of limitations. The appellee's claim, among others, is that the statutes of limitation did not begin to run until the issuance of the patent to the grant on October 29, 1906.

If that be true, the three-year statute of limitation cannot apply, for the reason that the appellant's evidence failed to show a title from or under the sovereignty of the soil, either regular or irregular, and, should we sustain the views of appellee, the five and ten-year limitation are not well taken, for the reason that this suit was begun within those limits after patent was issued.

The Sonoita being a complete and perfect grant before the Gadsden purchase, the appellant insists that limitation began to run from March 3, 1891, the date of the creation of the court of private land claims. That limitation did not begin to run in favor of occupants of the grant prior to that date we think is well settled. *Astiazaran* v. *Santa Rita L. & M. Co.*, 148 U. S. 80, 37 L. Ed. 376, 13 Sup. Ct. Rep. 457. The owner of this grant had applied to the political department of the government as early as 1879 to have his grant determined, and no action had been taken on his application at the time of the creation of the court of private land claims. As was said in *Astiazaran* v. *Santa Rita L. & M. Co.*, 148 U. S. 80, 81, 37 L. Ed. 376, 13 Sup. Ct. Rep. 457, involving a grant in New Mexico: "Undoubtedly, private rights of property within the ceded territory were not affected by the change of sovereignty and jurisdiction, and were entitled to protection, whether the party had the full and absolute ownership of the land, or merely an equitable interest therein, which required

some further act of the government to vest in him a perfect title.  But the duty of providing the mode of securing these rights, and of fulfilling the obligations imposed upon the United States by the treaties, belonged to the political department of the government; and Congress might either itself discharge that duty, or delegate it to the judicial department. *De la Croix* v. *Chamberlain,* 12 Wheat. 599, 601, 602, 6 L. Ed. 741; *Chouteau* v. *Eckhart,* 2 How. 344, 374, 11 L. Ed. 293; *Tameling* v. *United States Freehold Co.,* 93 U. S. 644, 661, 23 L. Ed. 998; *Botiller* v. *Dominguez,* 130 U. S. 238, 32 L. Ed. 926, 9 Sup. Ct. Rep. 525. . . .

"But Congress reserved to itself the determination of such claims; and enacted that the surveyor general for the territory, under the instructions of the Secretary of the Interior, should ascertain the origin, nature, character and extent of all such claims; and for this purpose might issue notices, summon witnesses, administer oaths and do all other necessary acts; and should make a full report on such claims, with his decision as to the validity or invalidity of each under the laws, usages and customs of the country before its cession to the United States; and that his report should be laid before Congress for such action thereon as might be deemed just and proper, with a view to confirm *bona fide* grants, and to give full effect to the treaty of 1848 between the United States and Mexico.  Acts of July 22, 1854, c. 103, sec. 8, 10 Stat. 309; July 15, 1870, c. 292, 16 Stat. 304."

In the case of *Stoneroad* v. *Stoneroad,* 158 U. S. 240, 248, 249, 250, 39 L. Ed. 966, 15 Sup. Ct. Rep. 822, 825, 826, having in view the duties and powers of the national government in the matter of surveys of both public land and private land grants, Justice White said: "The practice of the United States in dealing with the public domain and all governmental grants of land is to survey and issue a patent.  For this purpose, in the proper administrative branch of the government, accurate and efficient machinery, accompanied with full remedial process for the correction of error, is provided.  In speaking of the general policy of the law as to the surveying of the public domain, including private land grants, this court, through Mr. Justice Lamar, in *Knight* v. *United States Land Assn.,* 142 U. S. 161, 177, 35 L. Ed. 974, 12 Sup. Ct. Rep. 258, 264, said:

"That section provides as follows: 'The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: . . . Second. The public lands, including mines.' Section 453 provides: 'The Commissioner of the General Land Office shall perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and also such as relate to private claims of land, and the issuing of patents for all agents (grants) of land under the authority of the government.' Section 2478 provides: 'The Commissioner of the General Land Office, *under the direction of the Secretary of the Interior,* is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this title (The Public Lands) not otherwise specially provided for.'

"The phrase, 'under the direction of the Secretary of the Interior,' as used in these sections of the statutes, is not meaningless, but was intended as an expression in general terms of the power of the Secretary to supervise and control the extensive operations of the land department of which he is the head. It means that, in the important matters relating to the sale and disposition of the public domain, the surveying of private land claims, and the issuing of patents thereon, and the administration of the trusts devolving upon the government, by reason of the laws of Congress or under treaty stipulations, respecting the public domain, the Secretary of the Interior is the supervising agent of the government to do justice to all claimants and preserve the rights of the people of the United States. . . .

"It is not to be presumed that Congress intended, by confirming a grant which had never been surveyed, and had, therefore, never been distinctly separated from the public domain, to exempt it from the survey essential to its accurate segregation and delimitation, especially when this survey was fully provided for by the general law, in accordance with the uniform public policy of the government in dealing with questions of this character. The general rule being to exact a survey, the grant here under consideration could only be exempted from this requirement by an express statement in the act of Congress indicating an intention to depart from

the rule in the particular instance. No such intention is anywhere expressed in the confirmatory act. Indeed, the idea that the act, whilst confirming the title, did not contemplate a survey, for the purpose of marking its limits, amounts to the contention that the public domain itself should remain in part forever unsurveyed and undetermined, since a separation of the private claim from the public domain was essential to the ascertainment of what remained of the latter."

The owner of Sonoita grant claimed that he was given juridical possession of his grant by the Mexican authorities, and that it comprised over 12,000 acres. The supreme court in *Ely's Admr.* v. *United States,* 171 U. S. 220, 241, 43 L. Ed. 142, 18 Sup. Ct. Rep. 840, found that the grant was much less in area, and the court of private land claims determined the correct area to be 5,123.42 acres. The appellee's lands were not distinguishable from or segregated from the public lands until a survey and definite location of his boundaries were made under the authority and by the direction of the national government. While he was the absolute owner of 5,123.42 acres of land, until it was legally located, he had no means of knowing whether the appellant was occupying his land or not.

In any event, when in October, 1892, the United States filed its suit in the court of private land claims against Ainsa and others, asking for an adjudication of the Sonoita land .grant, and, if valid, that its extent and boundaries be fixed, it had the effect, while that suit was pending, of depriving any other court or tribunal of jurisdiction over the subject matter. As was said in the Astiazaran case: "The case is one of those, jurisdiction of which has been committed to a particular tribunal, and which cannot, therefore, at least while proceedings are pending before that tribunal, be taken up and decided by any other. *Johnson* v. *Towsley,* 13 Wall. 72, 20 L. Ed. 485; *Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Steel* v. *Smelting Co.,* 106 U. S. 447, 27 L. Ed. 226, 1 Sup. Ct. Rep. 389; *New Orleans* v. *Paine,* 147 U. S. 261, 37 L. Ed. 162, 13 Sup. Ct. Rep. 303."

Pending the litigation concerning the grant in the court of private land claims, the grant owner was without a court possessing jurisdiction to try his title or right of possession as against persons settled thereon. On April 12, 1904, the court

of private land claims lost control of the subject matter, when it made its final order approving the survey of the grant, and thereafter, on October 29, 1906, the patent of the Sonoita grant was issued in accordance with the decree of confirmation and approval of survey by the court of private land claims.

The matter of the issuance of the patent as of the survey was carried on in another department of the government, but in conjunction with, and in obedience to, and continuation of, the orders and decrees of the court of private land claims, and until patent was issued, giving the extent and boundaries of the grant, it seems to us that the good faith of the United States was pledged to protect the grantee, his successors and assigns, against the claim of appellant.

We think that the rule laid down in *Henshaw* v. *Bissell*, 18 Wall. 255, 270, 21 L. Ed. 835, is applicable to the facts in this case and determinative that limitation should not begin to run until after patent is issued. We quote from that case at page 270: "Whilst proceedings were pending before the tribunals of the United States for the confirmation of the claim under the Flugge grant, the statute did not run and could not run against the right of the claimant to the land in controversy. He was obliged by the legislation of Congress to present his claim for investigation and determination, under pain of being held to have abandoned it, and was subjected to numerous and expensive proceedings to establish its validity. As a result of the proceedings required, the government, in effect, promised, in case his claim was found to be valid, to give him in its patent such evidence of title as would secure to him the possession and enjoyment of his land. The legislation of Congress imposing this burden upon the claimant and promising this benefit to him is not the subject of any constitutional objection, and it is not, therefore, within the power of the legislature of a state to defeat its operation. It was adopted by the government in the discharge of its treaty obligations, with respect to which its authority is absolute and supreme. The action of the government thereunder, and the rights which perfected title insures to its possessor, cannot be impaired or defeated in any respect by the statute of limitations of the State. That statute can only begin to run against the title perfected under the legislation of Congress from the date of its consummation." To the same

effect, *Altschul* v. *O'Neill,* 35 Or. 202, 58 Pac. 95; *Galindo* v. *Wittenmeyer,* 49 Cal. 12.

The view we have taken dispenses with the necessity of passing upon the other errors assigned by appellant. The judgment of the lower court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

---

NOTE.—As to the running of the statute of limitations in actions to quiet title, see note in 20 Ann. Cas. 43.

As to color of title as an essential of plaintiff's case in adverse possession, see note in 88 Am. St. Rep. 703.

As to adverse possession against public lands, see note in 76 Am. St. Rep. 479.