**MARTINEZ et al. v. RIVERA et al.**
No. 4357.

United States Court of Appeals
Tenth Circuit.
April 16, 1952.

Quincy D. Adams, Albuquerque, N. M., and Harry L. Bigbee, Santa Fe, N. M., for appellants.

Oliver Seth, Santa Fe, N. M. (Seth & Montgomery, Santa Fe, N. M., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

The question presented on this appeal is whether the Tierra Amarilla Land Grant, a grant from the Republic of Mexico, situated partly in the State of New Mexico and partly in the State of Colorado, is a community grant or a private grant.

The Act of July 22, 1854, 10 Stat. 308, created the office of Surveyor General of New Mexico. On September 10, 1856, the Surveyor General of New Mexico, pursuant to § 8 of such Act, made a report to Congress on the claim of Francisco Martinez for confirmation of the grant, in which the Surveyor General recommended the confirmation of the grant in the following language:

"The Provincial Deputation was authorized by the laws of the Republic of Mexico to make donations of land to individuals, and this case being covered by the Treaty of Guadalupe Hidalgo, and the decision of the Supreme Court of the United States, in the case of 'J. C. Freemont vs. the U. S.' the Grant made to Manuel Martinez, of which Francisco Martinez is the present claimant, is deemed by this office to be a good and valid grant, and the Congress of the United States is hereby respectfully recommended to confirm the same, and cause a Patent to be issued therefore by the proper Department, and the land embraced

within the boundaries set forth in said grant to be surveyed."

The report was numbered 33.

The grant was confirmed by § 3 of the Act of June 21, 1860, 12 Stat. 71. The material part of § 3 reads as follows:

"Sec. 3. *And be it further enacted,* That the private land claims in the Territory of New Mexico, as recommended for confirmation by said surveyor-general in his reports, and abstract marked exhibit A, as communicated to Congress by the Secretary of the Interior in his letter dated the third of February eighteen hundred and sixty, and numbered from twenty to thirty-eight, both inclusive, be, and the same are hereby, confirmed, * *."

On February 21, 1881, a patent for the grant was issued to Francisco Martinez, his heirs and assigns.

In 1907, the legislature of the Territory of New Mexico enacted a statute for the management, control, and government of community land grants. N.M.S.L.1907, ch. 42, p. 57. The statute is now found in Art. 1, ch. 9, N.M.Stat.1941 Ann. §§ 9–101 to 9–117.

Section 9–102 in part provides:

"Application of article.—This article shall apply to all grants of land made by the government of Spain, or by the government of Mexico, to any community, town, colony or pueblo, or to any individual for the purpose of founding or establishing any community, town, colony or pueblo; * *."

Section 9–103 provides that the management and control of all the grants to which the article is applicable is "vested in a board of trustees, to be known as the 'Board of Trustees of the————Land Grant'" and that such board shall have power "to control, care for and manage the said grant; * * * to sue and be sued; * * * to sell, convey, lease, or mortgage so much of the land grant or real estate under its control as aforesaid as is held in common;

* * * to adopt and use an official seal; * * * to appoint judges and clerks of election at all elections herein provided for, subsequent to the first, and to canvass the votes cast thereat."

Purporting to act under § 9–106, the Board of County Commissioners of Rio Arriba County, New Mexico, undertook to call a special election to be held on April 2, 1951, for the purpose of electing five members as a board of trustees of the Tierra Amarilla Land Grant, and designated and appointed election officials, designated polling places, and instructed the secretary of the Board of County Commissioners to give notice of such election. Notice of such election was given.

On March 26, 1951, the plaintiffs below, appellees here, owners of large areas of land within the boundaries of the grant, brought this action against the members of the Board of County Commissioners of Rio Arriba County seeking an injunction restraining them from proceeding further with such election, from canvassing votes at such election, and from issuing certificates of election.

Jurisdiction is based on diversity of citizenship and the requisite amount in controversy.

During all the period intervening between the date of the confirmation of the grant and the action of the Board of County Commissioners on March 1, 1951, the grant had been managed and controlled as a private land grant and no action had ever been taken by anyone to elect a Board of Trustees to control and manage such grant.

By its judgment, the trial court granted a permanent injunction as prayed for in the complaint.

▆ The duty of providing the mode for securing and establishing claims to Spanish and Mexican land titles and fulfilling the treaty of Guadalupe Hidalgo developed upon the political department of the government.[1] Congress could either discharge

1. Tameling v. United States Freehold & Immigration Co., 93 U.S. 644, 661, 23 L.Ed. 998; Astiazaran v. Santa Rita Mining Co., 148 U.S. 80, 81, 13 S.Ct. 457, 37 L.Ed. 376; Yeast v. Pru, D.C.N.M., 292 F. 598, 605.

194

that duty itself or delegate it to the judicial department.[2]

It was not until the Act of March 3, 1891, 26 Stat. 854, that Congress established a judicial tribunal for the adjustment and confirmation of claims under grants from the governments of Spain and Mexico of land in New Mexico. Prior to such Act, Congress reserved to itself the determination of such claims and by the Act of July 22, 1854, provided:

"* * * that the surveyor general for the Territory under the instructions of the Secretary of the Interior, should ascertain the origin, nature, character, and extent of all such claims, * * * and should make a full report on such claims, with his decision as to the validity or invalidity of each under the laws, usage and customs of the country before its cession to the United States; and that his report should be laid before congress for such action thereon as might be deemed just and proper, with a view to confirm *bona fide* grants, and to give full effect to the treaty of 1848 between the United States and Mexico." [3]

■ In a series of opinions, beginning with Tameling v. United States Freehold Co., 93 U.S. 644, 23 L.Ed. 998, the Supreme Court held that the action of Congress, when taken, was conclusive as to the validity and the character or nature of the grant, and was not subject to review by the Supreme Court of the United States or any other judicial tribunal.[4]

The case of Reilly v. Shipman, 8 Cir., 266 F. 852, involved the question of whether the Anton Chico grant in New Mexico was a private or community grant. Congress had confirmed the grant as a community grant. The court held that the character of the grant must be determined

from the confirmatory act and that the courts were precluded from going behind the confirmation of Congress. To the same effect see Yeast v. Pru, D.C.N.M., 292 F. 598, 607.

In Flores v. Bruesselbach, 10 Cir., 149 F.2d 616, 617, this court said:

"Acting pursuant to the Act of Congress, approved July 22, 1854, 10 Stat. 308, the Surveyor-General of New Mexico recommended the confirmation of the Tierra Amarilla Grant to Francisco Martinez. The Grant was approved and confirmed to Francisco Martinez as Private Land Claim No. 3 by the Act of Congress, approved June 21, 1860, 12 Stat. 71. Congress thereby conclusively confirmed the title to the Grant in Francisco Martinez as a private land grant and its action is final and not subject to judicial review."

A like conclusion was reached with respect to the Tierra Amarilla Grant in H.N.D. Land Co. v. Suazo, 44 N.M. 547, 105 P.2d 744, 746–748.

■ The recommendation of the Surveyor-General was that the grant should be confirmed to Francisco Martinez and that a patent therefor should issue to him. The recommendation was without condition or qualification. It clearly recommended confirmation of the grant to Martinez individually as a private land grant. By the confirmatory act, Congress confirmed the grant, without qualification or limitation, as recommended by the Surveyor-General.

The confirmatory act of Congress is final and conclusive and this court may not go behind that act and determine the character or nature of the grant from the antecedent documents.

Affirmed.

2. Yeast v. Pru, D.C.N.M., 292 F. 598, 605.

3. Astiazaran v. Santa Rita Mining Co., 148 U.S. 80, 82, 13 S.Ct. 457, 37 L.Ed. 376.

4. See, also, U. S. v. Maxwell Land Grant Co., 121 U.S. 325, 366–367, 7 S.Ct. 1015, 30 L.Ed. 949; Id., 122 U.S. 365, 370, 7 S.Ct. 1271, 30 L.Ed. 1211; Astiazaran v. Santa Rita Mining Co., 148 U.S. 80, 82, 83, 13 S.Ct. 457, 37 L.Ed. 376.