**PAYNE LAND & LIVESTOCK COMPANY, a corporation, Plaintiff,**

v.

**Florencio ARCHULETA et al., Defendants.**

**Civ. No. 3904.**

United States District Court
D. New Mexico.

Feb. 1, 1960.

Smith & Smith, by Otto Smith and Fred C. Tharp, Clovis, N. M., for plaintiff.

Noble & Noble, by M. E. Noble, Las Vegas, N. M., Don A. Martinez, Las Vegas, N. M., for defendants.

ROGERS, District Judge.

This is an equity action to quiet the title of the plaintiff corporation in and to a tract of land in Rio Arriba County, New Mexico, which is within the perimeter of the Tierra Amarilla Grant. The case was filed in this court by the plaintiff, a Delaware corporation, against a number of defendants in excess of fifty, who are each residents of Rio Arriba County, New Mexico. The premises involved are some 7,000 acres in area, with water rights, and many times the $10,000 jurisdictional amount are involved in this cause.

At the threshold of the case, we are met with the problem of some of the parties defendant and intervenors being in possession of small areas of the contested acreage, but the acreage involved would not exceed some 75 acres. While the New Mexico Statute, Comp. St.1929, § 105–2001, relative to actions to quiet title expressly provides that such action may be brought by a person either in or out of possession of the quieted premises, it has been expressly decided in Quintana v. Vigil, 46 N.M. 200, 125 P.2d 711 that in the absence of the waiver, the defendant in possession of the premises is entitled as a matter of right, to a jury trial. In other words, ejectment would be the proper remedy to be invoked in such a situation.

In the case at bar, the first attorneys for the defendants raised this question and demanded a jury trial. One of the Judges of this court directed that the defendants file an answer in the suit to quiet title. By virtue of having early invoked the right to trial by jury,

and in view of the philosophy expressed by Mr. Justice Black in Beacon Theatres, Inc. v. Westover, U.S.D.C., 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988, this court has declined to pass upon the title and ownership of the fenced tracts, and will relegate the parties to an action of ejectment. In passing, it may be said that the remaining tracts so fenced as above stated, probably have not the statutory value upon which to predicate a suit in this court, so it will be assumed that full and complete justice will be accorded the plaintiff, Payne Land & Livestock Company, in the District Court of Rio Arriba County, New Mexico.

██ The Tierra Amarilla Land Grant, a grant from the Republic of Mexico, has received the careful and detailed attention of the U. S. District Court of this district, the State District courts of New Mexico, the Supreme Court of New Mexico, and of the Circuit Court of Appeals for the Tenth Circuit. Acting within the purview of an Act of Congress approved July 22, 1854, 10 Stat. 308, the Surveyor General of New Mexico recommended to Congress the confirmation of the Tierra Amarilla Grant to Francisco Martinez. The grant was subsequently approved and confirmed to the said Francisco Martinez as Private Land Claim Number 3 by the Act of Congress approved June 21, 1860, 12 Stat. 71. See Appendix 1. A reading and thorough study of the Congressional Act just mentioned, conclusively established that Congress confirmed the title to the Tierra Amarilla Grant in Francisco Martinez as a private land grant, and its action is final and not subject to judicial review.

The leading case on the proposition that Congress' action in this sphere is not subject to judicial review is Tameling v. United States Freehold & Emigration Co., 93 U.S. 644, 23 L.Ed. 998. See also Yeast v. Pru, D.C.N.M., 292 F. 598; United States v. Maxwell Land-Grant Co., 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949 and 122 U.S. 365, 7 S.Ct. 1271, 30 L.Ed. 1211 and Astiazaran v. Santa Rita Land & Mining Co., 148 U.S. 80, 13 S.Ct. 457, 37 L.Ed. 376.

After the Congressional confirmation, a patent (see Appendix 2) for the grant was issued to Francisco Martinez February 21, 1881, and was subsequently duly recorded in the office of the County Clerk of Rio Arriba County, New Mexico, on the 9th day of October, 1901.

It appears from the evidence adduced on the trial of this cause, including oral testimony and voluminous abstracts, that the plaintiff corporation is through mesne conveyances under the deed of Francisco Martinez and wife to one Manzanares, the holder of such title as conveyed to said premises by said muniments of title. It is unnecessary to relate each conveyance, but suffice it to say that Francisco Martinez and wife executed a deed to said premises to F. A. Manzanares under date of June 1, 1871. Manzanares conveyed the premises to Thomas B. Catron on December 31, 1878. Thomas B. Catron executed various conveyances of various tracts of land to certain individuals who, by conveyances to corporations and individuals, and by conveyances from the latter groups, have conveyed title to the Payne Land & Livestock Company, a corporation. A search of the abstracts of title reveals not only the conveyance of title, as above recited, but also the perfection of title by adverse possession in plaintiff company and its predecessors.

██ The defendants seek to establish title by adverse possession and "Hijuelas" (see Appendix 3), and easements for pasturage and wood hauling and timber cutting by prescription. Before title can ripen by adverse possession in New Mexico, three elements must be presented: (1) Actual, visible, exclusive, hostile and continuous possession; (2) under color of title; (3) for a period of ten years. See Flores v. Brueesselbach, 10 Cir., 149 F.2d 616. In this connection see also Catron v. Laughlin, 11 N.M. 604, 72 P. 26. This case deals with the Eaton Land Grant in Santa Fe County, but it is equally applicable to the case at bar, insofar as it holds that there was

no proof in the record sufficient to support a finding that the defendants had title to the grant by adverse possession against their co-tenants. The case also stands for the proposition heretofore enunciated that the action of Congress confirming a claim for land under a grant made by Mexico is to be treated as an adjudication, and the courts cannot revise what has been done by Congress.

█ Under the dual claims of adverse possession and prescriptive right, none of the defendants established to the satisfaction of the court, any rights by adverse possession or prescription, which would establish such rights, but the past actions they testified to consisted, for the most part, of occasional, sporadic and isolated instances of trespass on the lands in question, together with some isolated instances of specific permission being given from time to time.

The instant lands were not completely fenced until a year or so prior to the filing of this action, and access to the premises to the defendants has only been accomplished by surreptitious destroying of fences and some further isolated trespass.

A brief discussion should be had on the "Hijuelas" which are relied on by the defendants. These documents originated in the Kingdom of Spain, and have been described as documents given to parties entitled to distribution of an estate of a person deceased, and which contain the precise account of the distributive share. See Velasquez' Spanish Dictionary and Martinez v. Mundy, 61 N. M. 87, at page 95, 295 P.2d 209, at page 214. Objection to the admissibility of these Hijuelas was made by the plaintiff because of lack of acknowledgment. The Court, after reading translations of several of these Hijuelas, believes that within the four corners of the document, the elements of proper acknowledgment do exist, particularly in view of a series of ratifying acts of the legislature enacted regularly ever since the dates of the Hijuelas, themselves. Having admitted these documents into evidence,

the Court has given the same careful scrutiny and concludes that none of them grant any of the plaintiff's lands to the defendants who trace their descent to the persons named in the Hijuelas, and the Court is of the further considered opinion that none of the documents grant any right to pasture and wood in the premises subject to litigation herein.

The Tierra Amarilla Land Grant has been the subject of some searching investigations by the courts of New Mexico and of the Tenth Circuit. See H. N. D. Land Co. v. Suazo, 44 N.M. 547, 105 P.2d 744, which held, in effect, that a confirmation by Congress of the Mexican land grant was final and conclusive, and the Court could not go behind such confirmation to determine the nature of the title under the original grant and treaty relevant thereto. The treaty in question was the Treaty of Guadalupe Hidalgo, 9 Stat. 922. The Supreme Court of New Mexico further specifically ruled that even if the original Mexican grant could be construed to be a community grant, rather than a private grant, title to common lands was never in the settlers, but was in the Mexican Government, and passed to the United States by treaty, and the title which thereafter passed by confirmatory act of Congress and the patent issued in pursuance thereof was and is free of any trust which may have been created by the original grant.

The Supreme Court of New Mexico has most recently spoken on this land grant in Martinez v. Mundy, 61 N.M. 87, 295 P.2d 209. The Supreme Court, of New Mexico, through the Honorable John B. McManus, Jr., District Judge sitting on the Appellate Tribunal for the purpose of the Mundy case, exhaustively treats most of the issues presented in the instant case. In that opinion can be found a history of the title to the premises which practically duplicates the chain in the instant suit until very recent years. The binding effect of an Act of Congress in affirming a Mexican land grant title is announced, and a thorough discussion of Hijuelas is therein presented.

In the United States Court of Appeals for the Tenth Circuit, two cases have been decided, each opinion having been written by Judge Orie L. Phillips. The first case is that of Flores v. Brueesselbach, supra, wherein it was stated that where the Surveyor-General of New Mexico by Act of Congress recommended confirmation of the Tierra Amarilla Grant to certain individuals, and the grant was approved by Act of Congress, the Congress thereby conclusively confirmed the title to the grant in such individual as a private land grant, and Congress' action in that regard is final and not subject to judicial review. The Flores case, as heretofore stated, set forth the elements which must be established before adverse possession can be adjudged.

The second case is that of Martinez v. Rivera, 10 Cir., 196 F.2d 192. The gist of this decision is that the Act of Congress confirming private land claims in the New Mexico Territory, as recommended by the Surveyor-General thereof, including Mexican private land grant to the claimant thereof individually and without condition, qualification or limitation, was final and conclusive on the Federal courts as to the validity and the character and the nature of such grant as a private land grant, rather than as a community grant within the territorial statute for management, control and the government of such grants.

In viewing the evidence and finding the facts to be as hereinbefore stated, and in view of the unanimity of decisions between the State courts of New Mexico, the Supreme Courts of this District and Circuit, and the decisions of the Supreme Court of the United States, this Court feels constrained to quiet the title of the plaintiff in and to the premises herein, which are subject to an action to quiet title, and to prohibit future trespasses by the defendants on said land. A decree in conformity with this decision will be submitted within ten days from the date hereof, each party to bear its, his or her own costs.

Appendix 1

The material part of Section 3 of the Act of June 21, 1860 (12 Stat. 71) reads as follows:

"Sec. 3. *And be it further enacted,* That the private land claims in the Territory of New Mexico, as recommended for confirmation by said surveyor-general in his reports and abstract marked exhibit A, as communicated to Congress by the Secretary of the Interior in his letter dated the third of February eighteen hundred and sixty, and numbered from twenty to thirty-eight, both inclusive, be, and the same are hereby, confirmed, * *."

Appendix 2

Following is a copy of the Patent of the Tierra Amarilla Land Grant. The reader will note in studying this exhibit, that it might appear that the Tierra Amarilla Land Grant was a community grant. However, by reason of the confirmatory Act of Congress, Appendix 1 hereof, courts cannot go behind the confirmatory action of Congress or the patent issues pursuant thereto. It is the verbiage in the recital clauses of the patent hereinafter set forth which has caused the myriad of litigation and has resulted in the native people on the grant still being positive that the grant is a community grant with pasturing and wood gathering allowed to the descendants of the original settlers.

"Copy of the
Patent, Tierra Amarilla Grant.
"The United States of America.
"To all to whom these presents shall come, Greeting:

"Whereas, under the provisions of the eighth section of the Act of Congress approved on the twenty second day of July Anno Domini, one thousand eight hundred and fifty-four, entitled; 'An Act to establish the offices of surveyors general of New Mexico, Kansas and Nebraska, to grant donations to actual settlers therein and for other purpos-

es' (The private Land claim of Francisco Martinez situate in the then Territory of New Mexico, was recommended for confirmation by the surveyor general for said Territory of New Mexico in his report to Congress dated September tenth, A.D. one thousand eight hundred and fifty-six, which said report is in the words and figures as follows, to-wit):

"Francisco Martinez present Claimant, heir of Manuel Martinez, Original Grantee."

"This claim was filed in this office on the 25th day of August, 1856." On the 23rd day of April 183 , Manuel Martinez, petitioned Santiago Abren, political chief of the Territory of New Mexico for a certain tract of land situated in the County of Rio Arriba, called the Tierra Amarilla and bounded on the North by the Navajo River; on the south by the Nutrias River, on the east, the Mountain range, and on the West, the mouth of the Laguna de Los Caballos.

"On the 29th of April, 1832, this petition was referred by Political Chief to the Most Excellent Territorial Deputation, who on the same day referred it to the Corporation of Abiquiu, requiring it to report on the propriety of making the grant as prayed for by the petition.

"On the 15th day of May, 1832, the Corporation of Abiquiu reported favorably on the petition requiring however that the pastures and watering places, should remain free, for the benefit of the inhabitants of Abiquiu.

"On the 16th day of July, 1832, Manuel Martinez petitioned anew the Political Chief, objecting to the pastures and watering places being accepted. On the 20th day of July, 1832, the Most Excellent Territorial Deputation, granted to Manuel Martinez and those who should accompany him the land petitioned for under certain conditions therein contained, and directed the Constitutional Justice of Abiquiu to place the parties in possession of the land so granted, leaving the pastures, watering places and roads free, according to the customs existing in every settlement.

"The action of this office is taken on the original documents filed by the Claimant.

"The signatures by the Testimony of Domaciano Vigil are proven to be genuine.

"The absence of the Certificate of the Justice of Abiquiu, does not invalidate the grant, the testimony presented in the case showing that the Justice of Abiquiu proceeded to place the parties in possession, but was compelled to return to Abiquiu on account of the hostilities of the Indians.

"The testimony also shows that the original Grantee, and the present claimant have been in the peaceable and quiet possession of the land for a period of twenty-two years.

"The Provincial Deputation was authorized by the laws of the Republic of Mexico to make donation of land to individuals, and this case being covered by the Treaty of Guadalupe Hidalgo, and the decision of the Supreme Court of the United States, in the case of J. C. Fremont vs. the U. S. the Grant made Manuel Martinez of which Francisco Martinez is the present claimant is deemed by this office to be a good and valid grant, and the Congress of the United States is hereby respectfully recommended by the proper Department, and the land embraced within the boundaries set forth in said grant to be surveyed.

"(Signed)     Wm. Pelham
                "Surveyor General
                    of New Mexico

"Surveyor General's Office
"Santa Fe, New Mexico
"September 10, 1856
"Surveyor General's Office
"Santa Fe, New Mexico
"September 30, 1856
"I certify the foregoing to be a true copy of the original on file in this office,

"Wm. Pelham
"Surveyor General
of New Mexico

"And whereas, it further appears that said private land claim was subsequently confirmed as number three by the first section of the Act of Congress, approved June twenty-first, A.D. One thousand eight hundred and sixty, entitled 'an act to confirm certain Private Land Claims in the Territory of New Mexico.'

"And whereas, there has been deposited in the General Land Office of the United States a return with the descriptive notes and plat of survey of the said claim, confirmed as aforesaid, authenticated by the signature of the United States Surveyor General for the Territory of New Mexico, which descriptive notes and plat of survey are in the words and figures as follows, to-wit:

"Descriptive Notes of the Survey of the Tierra Amarilla Grant in the Territory of New Mexico and State of Colorado confirmed and Private Land claim number three to Francisco Martinez heir of Manuel Martinez by Act of Congress approved June Twenty-first, eighteen hundred and sixty and surveyed in July eighteen hundred and sixty six by surveyor and McBroon under their contract number sixty-eight of April fifteenth, eighteen hundred and seventy-six.

"Beginning at a stone eighteen by twelve (then follows a metes and bounds description of the Tierra Amarilla Grant covering pages 105 to 128 inclusive of the record). See U. S. Patent Map.

"Now know ye, that the United States of America in consideration of the premises and pursuant to the provisions of the second section of the Act of Congress of Third March A.D. One thousand eight hundred and sixty nine, entitled an act to confirm certain private land claims in the Territory of New Mexico [15 Stat. 440].

"Have given and granted, and by these presents do give and grant, unto the said Francisco Martinez, his heirs and assigns, the tract of land embraced and described in the foregoing survey but with the stipulation that in virtue of the provisions of the fourth section of the said Act of June twenty-first A.D. one thousand eight hundred and sixty these Patents shall only be construed as a Quit Claim or relinquishment on the part of the United States and shall not affect the adverse rights of any other person or persons whomsoever.

"To Have and to Hold the said tract with the appur*tan*ces unto the said Francisco Martinez his heirs and assigns forever, with the stipulation aforesaid.

"In Testimony whereof I, Rutherford B. Hayes, President of the United States of America, have caused these letters to be made Patent, and the seal of the General Land-Office, to be hereunto affixed.

"Given under my hand at the City of Washington, this Twenty-first day of February, in the year of our Lord, One thousand eight hundred and eighty-one, and of the Independence of the United States, the One Hundredth and Fifty.

"By the President: R. B. Hayes
"By W. H. Cook, Secretary
"S. W. Clark, Recorder of the General Land Office
"Recorded, Volume 17, P.P. 162 to 186, inclusive.
"Seal.
"Filed for Record in the office of the County Clerk of Rio Arriba County,

New Mexico, October 9, 1901, at 4 o'clock P.M. Recorded November 26, 1901, in Volume 15A, pages 102 to 130."

## Appendix 3

Hereinafter set forth is a translation furnished by the Foreign Language Department of the University of New Mexico of an "Hijuela" discussed in the foregoing opinion. The first sentence of the Hijuela, together with the certificate of Pablo Jaramillo, Justice of the Peace of Rio Arriba County, New Mexico, are the elements which have led me to think that within the four corners of the instrument appears a certification sufficient upon which to allow the instrument to be filed of record. At the same time, as is pointed out in the opinion, a study of the translation reveals that it does not apply to any of the lands in suit.

"Territory of N. M.

"Rio Arriba County

"Before me the Mayor of Abiquiu, Precinct # 5, Pablo Jaramillo, Justice of the Peace, on the 29th day of the month of September of the year 1863, personally have appeared the citizens Francisco Martínez and Francisco Antonio Salazar, whom I know and assert that I know. The first party says that as administrator and heir, and in the name and representation of his brothers, grants and conveys, according to the articles of the grant (Merced) to the second party a tract of land of 375 varas in length and six hundred and fifty varas in width, in varas fixed and surveyed in accordance with the standards of the Territory, which are located in Los Cañones as it is commonly known, and with the following boundaries: on the east the first ridge; on the west the first ridge; on the north, the ridge, and on the south another ridge. This land he acquired from his deceased father and sons, by a Royal grant made by the Mexican Government, in the site of Tierra Amarilla, as it is commonly called; approved by Congress and recorded in the Surveyor's Office of the Territory of New Mexico. The above-mentioned varas of land remain with the rights of pasture, waters,

firewood, lumber, watering places, free and common roads, without prejudice to any third party, nor to the owners, as in all settlements made and granted; all of which he hereby executes in a simple and pure transfer, so he (Salazar) will enjoy it himself, his children, heirs and successors, without being molested by anyone, and he (Martínez) obligates himself to keep him in quiet and peaceful possession.

"This transfer is made under the following conditions:

"1st: That he and his family will live in and cultivate the land for a period of three years.

"2nd: That if this is not done, he will lose the right to the land with its privileges, not being able to sell it or dispose of it until the completion of the term of cultivation, beginning the fifth day of November of the year 1863.

"I, the undersigned, as legal agent, procurator, grantee and owner of the said land, confirm the legality of this deed and sign for its understanding on the above-mentioned date.

"Francisco Martinez

"Territory of New Mexico,

"County of Rio Arriba.

"As Justice of the Peace of said county, I hereby certify that the transfer and acknowledgement mentioned in this deed are legal, and that both parties have agreed to observe and fulfill the conditions mentioned; and as the agent and owner is known by this Court, and has signed, I authorize it according to the law on the abovementioned date.

"Pablo Jaramillo, Justice of the Peace.

"Territory of New Mexico,

"County of Rio Arriba.

"I, Francisco Salazar, clerk of the Probate Court in and for the County of Rio Arriba and Territory of New Mexico, hereby certify that the above-mentioned document is legal and duly recorded in Registry Book Number 1, pages 544 and 545, in which I have recorded it myself today, May 20, 1864, A.D.

"Francisco Salazar,

"Clerk of the Probate Court"